No. 83-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

Plaintiff and Appellant,

-vs-

FARMERS INSURANCE EXCHANGE COMPANY,
GERALD McARTHUR, ROBERT McARTHUR
and JANNIE LEE McARTHUR,

Defendants and Respondents.

---

APPEAL FROM: The District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Leroy McKinnon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Landoe, Brown, Planalp, Kommers and Lineberger,
Bozeman, Montana

For Respondents:

James P. Harrington, Helena, Montana
Gary L. Walton, Butte, Montana

---

Submitted on Briefs: March 8, 1984

Decided: May 7, 1984

Filed: MAY    1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Appellant Mountain West Farm Bureau Mutual Insurance Company (Mountain West) appeals from a judgment of the Fifth Judicial District Court (Beaverhead County) that its policy of insurance extended coverage to Gerald McArthur as a person driving a covered automobile with the implied permission of its owner. We affirm.

Mountain West insured a fleet of corporate vehicles owned by Ralph Huntley & Son Corporation. One of the covered automobiles was a 1978 Toyota Celica used primarily by Barbara Huntley and Robert Huntley, the wife and son of the corporation's president.

Robert Huntley expressly granted permission to Gerald McArthur, a classmate at Beaverhead High School and close friend, to drive the Toyota vehicle on many different occasions. McArthur testified that he and Robert Huntley had an "understanding" that allowed McArthur to operate the car if he had a reason for taking the car and treated it properly.

In the early morning hours of March 23, 1980, Huntley and a friend decided to go to breakfast at the Truck Inn while McArthur and two other friends remained in the car.

Prior to their entering the Truck Inn, one of the friends (Schofield) called to Huntley and asked him for the keys to the car so that he could listen to the radio. Huntley gave the keys to Schofield with the admonishment that they were only to listen to the radio and not go anywhere.

After Huntley and his friend entered the Truck Inn, Officer Charles Osborne approached the car and questioned Schofield regarding a possible curfew violation. The boys

2

locked the doors to the car and the officer returned to his patrol car to radio for assistance.

McArthur feared a curfew violation would cause him to lose his privilege to be on the high school athletic teams. The boys decided to take off. McArthur climbed into the driver's seat because he was the only licensed and able driver.

As McArthur was backing out of the parking space, Officer Osborne grabbed the outside rear view mirror in an attempt to stop the vehicle. McArthur did not see Officer Osborne. Apparently the officer caught his night stick ring on the vehicle and was thrown to the ground. McArthur was unaware of the fact that as he left the parking lot he drove over Officer Osborne.

A jury trial was held on June 15 and 16, 1983 to determine Mountain West's coverage for this occurrence. The jury found that McArthur was using the car with Robert Huntley's implied permission. The court then entered judgment decreeing Mountain West to be an insurer of Gerald McArthur for defense of the action and payment of any damages arising out of the incident.

The following issues are raised on appeal:

1. Whether the trial court erred in failing to rule that implied consent did not exist as a matter of law.

2. Whether the trial court erroneously instructed the jury regarding implied consent and permissive use.

Mountain West argues that as a matter of law McArthur's use could not have been with implied consent because the use grossly deviated from any reasonable operation. Mountain West reasons that the altercation with Officer Osborne and the purpose of evading the police officer were factors which

3

removed McArthur's subsequent use of the vehicle from the scope of any implied permission. We disagree.

A complete and unreasonable departure from the intended use, or an intentionally dangerous and wrongful operation could support a ruling that the use was outside of the scope of permitted use as a matter of law. However, it is unnecessary to reach that issue in this case. There is testimony that McArthur had permission to use the vehicle. From the facts of this case the jury could have found, and did find, that leaving the scene to avoid a curfew violation was within the implied permission.

Mountain West also argues that any permission granted to McArthur was expressly revoked when Rob Huntley repeatedly admonished the boys not to "take off." Mountain West concludes that permission therefore could not exist as a matter of law.

There are two reasons why this argument must fail. In the first place the facts do not establish an absolute revocation, without exceptions, of permission to use the car. It would be reasonable to construe Huntley's admonishments as prohibiting joy riding or unwarranted use of the vehicle merely for the boys' pleasure at Huntley's inconvenience. A jury could fairly find, that when the intervening circumstances arose requiring immediate action, the prohibition was rendered inapplicable and the original permission continued.

A stronger reason is that there is testimony that McArthur never heard the admonishment.

4

The jury was instructed that to be effective, "a revocation must be known to the person using the car at the time of the accident." This statement of law was jointly offered by Mountain West and defendants and disposes of the revocation issue. There is sufficient evidence to raise a jury question as to whether Huntley's revocation of permission was communicated to McArthur.

Mountain West finally argues that the district court failed to properly instruct the jury regarding permissive use and implied consent.

The following instruction was jointly offered by Mountain West and the defendants:

> "Permission to use an automobile and render the driver at the time of the accident an insured, under the Plaintiff's policy, may be express or implied. Implied permission is permission to use an automobile that is not expressly given, but is determined by the practice over a period of time. There is no question of express permission in this case.
>
> "It is the Plaintiff's position that implied permission was never granted to Gerald McArthur or, if granted, was revoked by the facts and circumstances occurring on March 22, 1980.
>
> "It is the Defendants' position that implied permission was granted to Gerald McArthur and no revocation of this implied permission occurred.
>
> "It is the law that to be effective, a revocation must be known to the person using the car at the time of the accident."

Mountain West's challenges to this jointly offered instruction will not be heard for the first time on appeal. Coleman v. Higgins (1960), 137 Mont. 222, 351 P.2d 901.

Mountain West contends an additional instruction was offered and should have been given by the court which

5

addressed the scope of the permission. In this case, the accident occurred immediately upon McArthur's operation of the car. Thus the trial court correctly ruled that the question of scope of permission could not be distinguished from the question of fact of permission under the "facts and circumstances" existing at the time of operation.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

6

Mr. Justice L.C. Gulbrandson dissenting.

I respectfully dissent.

McArthur, in claiming that he had implied permission to use the Huntley vehicle, consistently testified that he would have to have had a "good purpose" to use the vehicle. The majority opinion states, "From the facts of this case the jury could have found, and did find, that leaving the scene to avoid a curfew violation was within the implied permission."

In my view, the plaintiff was entitled to a jury instruction on the question of the permittee excluding or deviating from the scope of the permission given. The plaintiff offered such an instruction, which was refused by the court.

I would reverse and remand for failure to give adequate jury instructions.

_____
Justice