No. 88-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

HORACE MANN INSURANCE, an Illinois
corporation,

Plaintiff and Respondent,

-vs-

MATTHEW HAMPTON, SAFECO INSURANCE COMPANY
OF AMERICA, a Washinton corporation, and
LAWRENCE BLUNDELL, an individual,

Defendants and Appellants.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard Ranney; Williams Law Firm, Missoula, Montana

For Respondent:

Kim L. Ritter; Milodragovich, Dale & Dye; Missoula,
Montana

_____

Submitted on Briefs: Aug. 11, 1988

Decided: January 11, 1989

Filed:

ED SMITH
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Respondent Horace Mann Insurance filed a declaratory judgment action in the District Court of the Fourth Judicial District of Montana, Missoula County, seeking to avoid coverage under its automobile liability policy issued to Bernard and Claudia Wever. The District Court granted summary judgment in favor of respondent, holding that the terms of the policy were violated when the vehicle was not used within the scope of the owners' consent. We reverse.

On the evening of January 21, 1987, near East Missoula, Montana, Matthew Hampton (Hampton) was seriously injured in an automobile accident caused by Lawrence Blundell (Blundell). Blundell was driving the other vehicle involved in this accident, a 1977 Chevrolet Malibu, owned by Bernard and Claudia Wever. Blundell was under the influence of alcohol, crossed the center line, and struck Hampton's vehicle nearly head-on. The Wever vehicle was insured by Horace Mann. Blundell had no insurance of his own.

Blundell was a mechanic and rented a shop building and lot from Sophie Wever, Bernard's mother and de facto owner of the car. Because he was behind in his rent, Blundell agreed with the Wevers to overhaul the engine on the 1977 Chevrolet Malibu in exchange for three months rent credit. On January 21, 1987, at about 5:30 p.m., Blundell took possession of the car at Sophie Wever's house and drove it a short distance to the shop. Blundell expected another customer to pick up a vehicle which would make room for the Wever car at his shop. Blundell waited for approximately one hour but the customer did not arrive. As a result, Blundell believed it would be unsafe to leave the Wever car at his shop overnight because

2

of possible theft or vandalism. For this reason, and to test drive it for diagnostic purposes, Blundell determined he would drive the car to his home that evening.

At about 6:30 p.m., Blundell drove with his son in the Wever car to a local tavern. There the two drank beer for several hours and talked. Blundell then drove his son home and was enroute to his home when the accident occurred about 11:15 p.m.

Hampton made claim for his damages against Blundell and Wevers' liability insurer, Horace Mann Insurance Company. Horace Mann filed this declaratory judgment action against Blundell, Hampton, and Safeco Insurance Company of America (Hampton's uninsured motorist insurer) denying liability coverage to Blundell based on the omnibus clause in its policy which reads in part as follows:

> WHO IS AN INSURED?
> When we refer to your car, a newly acquired car or a temporary substitute car, insured means:
> 1. you;
> 2. your relatives;
> 3. any other person while using your car if its use is within the scope of your consent;
>
> . . .

Horace Mann contends the consensual use of the vehicle granted to Blundell by the Wevers was narrow and that Blundell exceeded the scope of the consent by driving to the tavern for personal purposes and driving while intoxicated. The argument is that the Wevers did not consent to the use of the car for the purpose to which it was applied and for the atrocious behavior of drunk driving and causing an accident. Therefore, the consensual use was extinguished and liability insurance coverage did not extend. The effect of Horace

3

Mann's argument would be that permittee drivers become uninsured motorists when they exceed the scope of their authorized use.

The issue on appeal is whether Montana's Mandatory Liability Protection Act, § 61-6-301, MCA, requires automobile liability insurance policies to continue in force and effect for the use by Blundell of Wever's automobile. We answer that it does extend coverage to the minimum statutory requirement.

Prior to the enactment of § 61-6-301, MCA, Montana relied solely upon a statutory scheme of insurance protection under what is known as the Financial Responsibility Act, or the "Motor Vehicle Safety-Responsibility Act," § 61-6-101, MCA. Under this act, a driver whose license has been revoked by the state must have proof of financial responsibility as required by the statute. This may be accomplished by filing a certificate of insurance, a bond or a certificate or deposit of money or securities. Section 61-6-132, MCA.

In 1979, Montana's Legislature enacted the Mandatory Liability Protection Act which reads in part:

> 61-6-301. Required motor vehicle insurance. (1) Every owner of a motor vehicle which is registered and operated in Montana by the owner or with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle, as defined in 61-1-102, in an amount not less than that required by 61-6-103, or a certificate of self-insurance issued in accordance with 61-6-143.

The clear purpose of this statute is to protect innocent members of the general public injured on the

highways through the negligence of financially irresponsible motorists. Iowa Mutual Ins. Co. v. Davis (Mont. 1988), 752 P.2d 166, 45 St.Rep. 514. As stated in 12A Couch on Insurance 2d (Rev. ed.), § 45:692, the statute is remedial in nature, and insurance policies issued under this scheme must be liberally construed in light of the clear purpose and public policy of the statute -- to provide compensation to those injured by automobiles.

In Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820, we examined a "household exclusion" in an automobile insurance policy in light of the Mandatory Liability Protection Act language requiring insurance protection against bodily injury and property damage to "any person." We held this statutory language to be an express outlawing of household exclusion clauses.

Similarly, in Bill Atkin Volkswagen Inc. v. McClafferty (1984), 213 Mont. 99, 689 P.2d 1237, we held Montana's Mandatory Liability Protection Act required an automobile dealer's insurance to extend to customers using "loaner cars." By focusing on the statute's "every owner of a motor vehicle" language, we rejected the argument of the insurance company and held that an automobile dealer, though not an operator, is an owner and therefore required by law to provide liability coverage to its permittees.

Most recently, in Iowa Mutual, supra, we carefully examined the validity of a named driver exclusion in light of the Mandatory Liability Protection Act. We concluded that such an attempted exclusion was contrary to public policy and therefore invalid. The analysis made in Iowa Mutual is particularly pertinent to this case. We there pointed out that under Bill Atkin, other than the specific exceptions listed in § 61-6-303, MCA, there were no exceptions to the

5

statutory requirement that "every owner of a motor vehicle registered and operated in Montana by the owner or with his permission [is] to provide insurance for liability caused by maintenance or use of the motor vehicle." Iowa Mutual, 752 P.2d at 168. In that case we emphasized the statutory requirement for insurance of a vehicle operated with permission unless it met one of the other exceptions. Those exceptions are not applicable to the present case.

In Iowa Mutual, we next referred to Bain v. Gleason (Mont. 1986), 726 P.2d 1153, 43 St.Rep. 1897, where we stated:

> In Bain we recognized that "it is the public policy of [the State of Montana] . . . that every owner of a motor vehicle [licensed and] operated in Montana must procure a policy of insurance which continuously provides coverage up to the limits set forth in [§ 61-6-103, MCA]. Bain, 726 P.2d at 1156. . .

Iowa Mutual, 752 P.2d at 169. This underscored the need for an owner to provide continuous coverage up to the required statutory limits.

The insurance carrier argued in Iowa Mutual that the invalidation of the driver exclusion would thwart public policy and create a burden on the insureds. In response to those arguments we then stated:

> We are convinced that the opposite is true. Our ruling today will eliminate yet another avenue through which the compensation of innocent automobile accident victims can be sidestepped. Our ruling does not, however, prohibit an insurer from entering into agreements with their insureds to limit coverage to the statutory minimum amounts as set forth in § 61-6-103, MCA. Other states have reached similar conclusions.

6

. . .

> The enforcement of minimum statutory coverage is mandated by statute in Montana and is a minor burden on insureds when compared to increased protection of the general traveling public.

Iowa Mutual, 752 P.2d at 170-71.

As we further stated in Iowa Mutual, laws established for the benefit of the public cannot be contravened by private contract. Iowa Mutual, 752 P.2d at 169. When an insurer fails to provide a policy in compliance with the requirements of a statute mandating insurance protection, the courts are forced to reform the policy so that it is in compliance. 12A Couch on Insurance 2d (Rev. ed.), § 45:692.

We conclude that we shall give effect to the requirement of § 61-6-103, MCA, which requires motor vehicle liability insurance to provide continuous coverage up to the limits of the statute, for every motor vehicle operated with the permission of the owner. Where a driver of a motor vehicle initially obtains control and operates a vehicle with the permission of the owner, we hold that Montana's Mandatory Liability Protection Act requires liability insurance must continue to cover the vehicle even though the permittee may have exceeded the scope of the owner's permission or consent. As we did in Iowa Mutual, we further hold that the enforcement of minimum statutory coverage in Montana is mandated. We recognize that the lower court may wish to reconsider whether permission was given by the insured in a manner sufficient to warrant the extension of liability coverage in excess of the statutory minimum.

The judgment is reversed and remanded for further proceedings consistent with this decision.

Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

In my view, the majority, by adopting the "initial permission" test (more colorfully known by many writers as the "Come hell or high water rule") has departed drastically from authority previously enunciated in decisions of this Court, without reference to, or discussion of, those decisions.

To illustrate the previous view, two examples should suffice. In Mountain West Farm Bureau v. Farmers Insurance (1984), 209 Mont. 467, 680 P.2d 330, this Court declared:

> A complete and unreasonable departure from the intended use, or an intentionally dangerous and wrongful operation <u>could</u> support a ruling that the use was <u>outside</u> of the scope of permitted use as a matter of law. (Emphasis included.)

Mountain West, 680 P.2d at 331. Thereafter, in Farmer's Ins. Exchange v. Janzer (Mont. 1985), 697 P.2d 460, 42 St.Rep. 337, this Court, in commenting on Mountain West, supra, stated:

> <u>Mountain West</u> involved a question regarding the <u>degree</u> of permission granted. . . This court affirmed the lower court's ruling that Mountain West was the insurer of the defendant for the defense of the action and the payment of any damages arising out of the incident. The instant case, likewise, presents a question involving <u>scope of "permission."</u> (Emphasis added.)

Farmer's Ins. Exchange, 697 P.2d at 465-466.

The foregoing statements clearly indicated to the bench and bar of this state, in my opinion, that this Court had adopted, or would adopt, some rule other than the "initial permission" rule. The decision to now adopt a minority absolute rule, in the light of contra expressions of this Court, should, in my view be left to the Montana Legislature.

I would affirm the judgment of the trial judge.

L.C. Gulbrandson

Justice

9