No.   91-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

ALLSTATE INSURANCE COMPANY,

Plaintiff and Respondent,

v.

WILLIAM R. HANKINSON, LUKE
HANKINSON, GERALD BAASCH,
GWEN GRENFELL,

Defendants and Appellants.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Darla J. Keck; Datsopoulos, MacDonald & Lind,
Missoula, Montana

For Respondent:

Sherman V. Lohn and Susan P. Roy; Garlington, Lohn
& Robinson, Missoula, Montana

Submitted on Briefs: June 6, 1991

Decided: July 15, 1991

Filed:

JUL 15 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The District Court for the Fourth Judicial District, Missoula County, granted summary judgment to Allstate Insurance Company in this action for declaratory judgment as to automobile liability insurance coverage. We affirm.

The issue is whether the District Court erred in concluding that the insured, William Hankinson, did not give implied permission to his son, Luke Hankinson, to drive the Cloninger vehicle on July 30, 1988.

On July 30, 1988, a 1967 Buick driven by Luke Hankinson was involved in an automobile accident on U.S. Highway 200 east of Bonner, Montana. The vehicle was owned by Kathy Cloninger, whose son, Brian Young, had given his friend Luke Hankinson permission to drive the car. As a result of the accident, defendants Gerald Baasch and Gwen Grenfell were injured.

Luke Hankinson was an insured driver on his father's insurance policy with Allstate Insurance Company (Allstate). In this action, Allstate seeks a declaratory judgment that it has no obligation to defend or indemnify Luke Hankinson for any claims by defendants Baasch and Grenfell arising out of the accident. In a previous appeal to this Court, the Court reversed a summary judgment in favor of defendants. The District Court had granted summary judgment on the basis that Luke Hankinson was driving the 1967 Buick with the owner's permission. Allstate Ins. Co. v. Hankinson

2

(Mont. 1990), 795 P.2d 480, 47 St.Rep. 1380. This Court held that, under § 61-6-301, MCA, "the key issue for this case is whether Luke's father gave him permission to drive the non-owned vehicle." Allstate, 795 P.2d at 482.

On remand, Allstate and the defendants each filed with the court affidavits by Luke's father, William Hankinson. The affidavit submitted by Allstate read as follows:

> 1. I am the named insured in Allstate Policy No. 020 960067. My son is Luke Hankinson.
>
> 2. I recall the day of the accident because the boys stopped by my house. Brian Young was driving the car. When I learned they were going on the Blackfoot road, which is a dangerous road, I asked who was driving. They said Brian was driving; I then told Brian to drive carefully because the road is dangerous.
>
> 3. We had no discussion about Luke's driving the car, and I never gave any permission, implied or express, to Luke to drive the car on July 30, 1988, and would not have given any permission.
>
> 4. If I had known that Luke wished or intended to drive a car belonging to Kathy Cloninger, without her permission, I would not have given my permission.
>
> 5. If I had known that Luke would be drinking alcohol on July 30, 1988, I would not have given my permission for him to drive and would have instructed him not to drive Kathy Cloninger's vehicle or any other vehicle.

The affidavit of William Hankinson submitted by defendants read as follows:

3

1. That I am the named insured on the policy of insurance which is the subject of this declaratory judgment action.

2. That I am the father of Luke Hankinson, who was also insured under my Allstate policy of insurance at the time of the accident.

3. That I previously signed an Affidavit on the 25th day of July, 1990, for Allstate Insurance Co. which is true and accurate to the best of my knowledge and belief. That the following information is provided to supplement and to better understand the information provided in such Affidavit.

4. That on the day of the accident, although I did inquire as to who was going to drive and asked Brian to drive carefully, I did not tell my son Luke that he could not drive.

5. That I have not in the past restricted Luke's driving of vehicles and Luke did not need to routinely seek my permission when he wanted to drive. For that reason, Luke could have reasonably believed that he had my implied permission to drive on the day of the accident.

Allstate also filed an affidavit of Luke Hankinson, which read as follows:

1. I was the driver of a 1967 Buick belonging to Kathy Cloninger when an accident occurred on July 30, 1988.

2. It is possible that I was not living at home on the day of the accident.

3. My father never gave me any permission of any kind, implied or express, to drive the car belonging to Kathy Cloninger, and I had no belief that I had my father's implied permission to drive the Cloninger car on the day of the accident.

4

4. If my father had known that Kathy Cloninger had denied permission for my driving her 1967 Buick, he would not have allowed me to drive it.

5. If my father had known that I would be drinking on July 30, 1988, he would have specifically denied me permission to drive Kathy Cloninger's 1967 Buick or any vehicle on that day.

Based on the affidavits, the court found that William Hankinson did not give express permission to Luke to drive the Cloninger car and that Luke denies that he thought he had implied permission to do so. The court granted summary judgment for Allstate. Defendants appeal.

The defendants cite two cases in support of their position that William Hankinson gave implied consent to his son Luke to drive the Cloninger vehicle. They argue that Allstate must provide insurance coverage and that they are entitled to summary judgment.

Defendants first cite Mountain West Farm Bureau v. Farmers Ins. (1984), 209 Mont. 467, 680 P.2d 330. In that case, Gerald McArthur, a friend of the son of the insured, had been given permission by the son to drive the vehicle "on many occasions." At the time of the accident, the son of the insured was enjoying an early-morning breakfast in a restaurant while McArthur and another friend remained in the car. McArthur had obtained the keys in order to listen to the car radio, but the son of the insured had admonished him only to listen to the radio and not go anywhere.

5

When a police officer approached the car and questioned the two occupants about a possible curfew violation, they locked the car doors and McArthur began backing out of the parking lot, running over the police officer in the process.

This Court held that there was implied permission to use the car because the facts did not establish an absolute revocation of permission to use the car and, as "a stronger reason," there was testimony that McArthur never heard the admonishment not to go anywhere. Mountain West, 680 P.2d at 331. This Court also stated that "[a] complete and unreasonable departure from the intended use, or an intentionally dangerous and wrongful operation could support a ruling that the use was outside of the scope of permitted use as a matter of law." Mountain West, 680 P.2d at 331.

The second case cited by defendants is Horace Mann Ins. v. Hampton (1989), 235 Mont. 354, 767 P.2d 343. In that case, a mechanic had possession of the insured vehicle so that he could overhaul the engine. He used the car when he went out drinking, and was in an accident. This Court held that Montana's Mandatory Liability Protection Act, § 61-6-301, MCA, required that liability insurance continue in force to the minimum statutory requirement, because the mechanic initially obtained control and operated the vehicle with the permission of the owner. Horace Mann, 767 P.2d at 345-46.

The reasons for concluding that there was implied permission to drive the vehicles in Mountain West and Horace Mann are not

6

present in this case. As indicated above, resolution of <u>Mountain West</u> was determined by the particular facts of that case, including permission by the insured "on many occasions" to drive the car in question. And here, unlike the situation in <u>Horace Mann</u>, there was no initial permission by William Hankinson for Luke to drive the Cloninger car, according to the affidavits submitted.

William Hankinson stated in his affidavit that he did not and would not have given Luke permission to drive the Cloninger car on the day in question. Luke stated in his affidavit that he believed his father would have denied him permission to drive the Cloninger vehicle on that day. We conclude that the District Court was correct in determining that there was no express or implied permission by William Hankinson for Luke to drive the Cloninger vehicle. We hold that the District Court did not err in granting summary judgment for Allstate.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

7

Karla M. Gray

William E. Hunt

Jim Nelson

Justices

July 15, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Darla J. Keck
Datsopoulos, MacDonald & Lind
201 W. Main, Ste. 201
Missoula, MT  59802

Sherman V. Lohn and Susan P. Roy
Garlington, Lohn & Robinson
P.O. Box 7909
Missoula, MT  59807-7909

Hugh G. Kidder
Attorney at Law
144 W. Front St.
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy