**Arlice GEORGESON, Personal Representative of the Estate of Roy Kenton Georgeson, Deceased, and Jeanne R. Georgeson, Guardian Ad Litem for Anthony S. Georgeson and Jamie M. Georgeson, Minors, Plaintiffs,**

v.

**FIDELITY & GUARANTY INSURANCE COMPANY, an Iowa Corporation, and Kenya Corporation, d/b/a Channel Communications, a Kansas Corporation, Defendants.**

No. CV–96–058–GF.

United States District Court,
· D. Montana,
Great Falls Division.

June 26, 1998.

Patricia O. Cotter, Cotter & Cotter, Great Falls, MT, Jeremiah C. Lynch, Lynch Law Office, Great Falls, MT, for Arlice Georgeson, Jeanne R. Georgeson.

Susan P. Roy, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for Fidelity and Guaranty Insurance Company, Kenya Corp.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

### FACTUAL BACKGROUND

On July 17, 1993, Roy Georgeson and his co-employee, Darrell Daniel, were string-ing cable along a "run" of utility poles in Cut Bank, Montana, utilizing a truck and attached trailer owned by their employer, Kenya Corporation, d/b/a Channel Communications ("Channel Communications"). Specifically, Georgeson and Daniel laid out approximately 150 feet of cable, one end of which was attached to a spool resting on the trailer. Thereafter, Georgeson, as the lineman, ascended a utility pole at the other end of the cable, where he raised the cable and attached it to the pole. The cable was left "slacking" to the ground, so that traffic could proceed through the intersection. Georgeson then crossed the street, ascended a pole and placed the cable in a clamp located approximately twenty feet up the pole. Once the cable was in the clamp, Daniel began to flag traffic to a stop, so that the slacked cable could be raised off the roadway. However, before the cable was raised, a vehicle driven by Eugenia Marie DuBray, an uninsured motorist, entered the intersection and the cable became caught on the vehicle's bumper. As the vehicle proceeded through the intersection, the cable tightened, which caused Georgeson to fall from the utility pole, fatally injuring him.

### PROCEDURAL BACKGROUND

On April 19, 1995, Arlice Georgeson, in her capacity as Personal Representative of the Estate of Roy K. Georgeson, and Jeanne R. Georgeson, in her capacity as Guardian *Ad Litem* for Anthony S. Georgeson and Jamie M. Georgeson, the minor children of Roy Georgeson, instituted an action in this court against Eugenia Marie DuBray, seeking monetary compensation for the damages resulting from her negligence. *See, Georgeson v. DuBray,* CV–95–046–GF–PGH. On August 29, 1995, the default of Eugenia Marie DuBray was entered based upon her failure to appear. Thereafter, the court entered an order directing DuBray to appear, on December 18, 1995, and show cause why default judgment should not be entered against her. Subsequent to the hearing,

the court, on February 26, 1996, entered a Judgment by Default in favor of the plaintiffs and against Eugenia DuBray in the sum of $781,389.00.

Prior to filing suit against DuBray, the plaintiffs made a claim for uninsured motorist benefits under an insurance policy issued by defendant Fidelity & Guaranty Insurance Company ("Fidelity") to Channel Communications.[1] On April 3, 1995, and again on April 12, 1995, Fidelity denied coverage upon the ground that Roy Georgeson was not an "insured" as defined in the uninsured motorist endorsement to the subject policy.

On May 22, 1996, plaintiffs instituted the above-entitled action, pursuant to 28 U.S.C. §§ 2201–2203, seeking, *inter alia*, a declaration regarding the scope of coverage under the subject policy. Specifically, plaintiffs seek a declaration regarding their entitlement to benefits under the "uninsured motorist" endorsement to the subject policy. Presently before the court are the parties' cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56, on the coverage issue.[2] Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

### DISCUSSION

Analysis of the coverage dispute herein must necessarily begin with a review of the applicable provisions of the subject policy. The Fidelity policy provides the following "liability coverage":

A. Coverage:

[Fidelity] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or property damage to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The "liability coverage" portion of the Fidelity policy provides coverage to the following "insureds":

a) [the named insured] for any covered "auto",

b) Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .

The Fidelity policy contains an uninsured motorist endorsement which provides in pertinent part:

A. Coverage:

1. [Fidelity] will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle" . . . the owner's or driver's liability for these damages must result from ownership, maintenance, or use of the "uninsured motor vehicle."

B. Who is an Insured:

1. [The named insured]

.     .     .     .     .

3. Anyone else "occupying"[3] a covered "auto" . . .

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

---

1. The subject insurance policy was in force and effect on the date of the underlying accident. The policy contained "uninsured motorist" coverage applicable to those vehicles owned by Channel Communications and listed on the "Vehicle Schedule" incorporated into the policy. It is beyond dispute that at least one of the vehicles identified in the "Vehicle Schedule" was being used by Georgeson and Daniel on the date of the accident.

2. The parties' summary judgment motions have raised additional issues, which the court will address by way of separate memorandum and order. Specifically, the issues pertain to (1) the propriety of "stacking" the uninsured motorist benefits; and (2) whether the plaintiffs' claims are barred by their purported failure to provide Fidelity with notice of the underlying action against Eugenia DuBray.

3. The uninsured motorist endorsement defines "occupying" as "in, upon, getting in, on, out, or off."

In the case *sub judice*, Fidelity asserts Georgeson was not an "insured," as defined in the uninsured motorist endorsement, because he was not "occupying" a covered vehicle at the time of the accident. Fidelity further asserts Georgeson was not an "insured" under the liability portion of the subject policy, because he was not a permissive user of a covered vehicle. In response, plaintiffs contend that, at the time of his injury and death, Roy Georgeson was an "omnibus" insured under the liability portion of the subject policy, having been granted permission to use a vehicle owned by Channel Communications, and listed on the "Vehicle Schedule" attendant the subject policy. Accordingly, plaintiffs assert Georgeson, as an omnibus insured, is entitled benefits under the uninsured motorist endorsement.

▮ In construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with Montana law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute. *See, Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 640 P.2d 908, 910 (1982). *See also, Imgrund v. Yarborough*, 199 W.Va. 187, 483 S.E.2d 533, 534 (1997) ("Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorist statutes."). Accordingly, provisions in an insurance policy that reduce the scope of coverage required by statutory mandate are void and ineffective as against public policy. *See, Jacob-*

*son, supra*, 640 P.2d at 910–911; *Guiberson v. Hartford Cas. Ins. Co.*, 217 Mont. 279, 704 P.2d 68 (1985).

▮ All motor vehicle liability insurance policies issued in Montana must include uninsured motorist coverage, unless the named insured expressly rejects such coverage. *See,* Mont.Code Ann. § 33–23–201 (1997).[4] The public policy behind Montana's mandatory uninsured motorist coverage statute, Mont.Code Ann. § 33–23–201, is to protect the insured against the risk of inadequate compensation resulting from injuries and damages incurred in an automobile accident with an uninsured motorist. *See, Jacobson, supra*, 640 P.2d at 911. Accordingly, given that public policy, the court is compelled to conclude insurers, in order to comply with Montana's statutory mandate, must offer uninsured coverage to a class of insureds coextensive with the class covered by the policy's liability coverage. *See, Jacobson, supra*, 640 P.2d at 911–911. *See also, Hager v. American West Ins. Co.*, 732 F.Supp. 1072, 1074 (D.Mont.1989) (citations omitted) (recognizing "the generally accepted principle that the uninsured motorist coverage of an insurance policy may not limit the class of persons covered under the endorsement to a group smaller than that covered under the liability provisions of the same policy."). The court's holding is consistent with, and compelled by, Mont.Code Ann. § 33–23–201, which mandates uninsured motorist coverage "*. . . for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."

---

4. Mont.Code Ann. § 33–23–201 provides:
   (1) No motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state, with respect to any motor vehicle registered and principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in 61–6–103, under provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, caused by an accident arising out of the operation or use of such vehicle.

The majority of uninsured motorist statutes do not expressly define the classes of persons to whom uninsured motorist coverage is intended to be extended. They simply state that automobile liability insurance policies must provide uninsured motorist coverage "for the protection of persons insured thereunder." Such terminology has been interpreted as intended to confer uninsured motorist coverage upon anyone who is insured under the liability coverages of the policy.

*Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92, 97 (Colo.1995), *quoting,* 2 Irvin E. Schermer, *Automobile Liability Insurance No–Fault Insurance Unisured Motorists Compulsory Coverage* § 27.07, at 2742 (2d ed.1994)

■ The Montana legislature's employment of the broad term "use" in the uninsured motorist coverage statute, instead of the limited term "occupying," is a policy choice well-grounded in reality. Many motor vehicles are used for tasks beyond transporting the owner or driver, and coverage is provided through Mont.Code Ann. § 33–23–201 for persons involved with the reasonable use of those vehicles. Moreover, as recognized by the Montana Supreme Court, uninsured motorist coverage is personal and portable—there is no requirement that the insured be "occupying" an insured vehicle.

Uninsured motorist coverage, like no-fault coverage, is personal and portable. "... They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick."

*Jacobson, supra,* 640 P.2d at 912, *quoting, Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141, 152 (1980). Accordingly, the court concludes the "occupancy" restriction in the definition of "insured," as set forth in the subject policy's uninsured motorist endorsement, limits the scope of coverage mandated by Montana's uninsured motorist statute and, as a result, is invalid.[5]

■ When the language of an insurance policy is contrary to statute and, as a result, void, the policy should be construed to contain the coverage required by Montana law. Mont.Code Ann. § 33–15–315 mandates that:

**Validity of noncomplying forms.** Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.

Mont.Code Ann. § 33–15–315 (1997).

Consequently, the court reads the Fidelity policy to provide uninsured motorist coverage for permissive users of covered vehicles, in accordance with the mandate of Mont.Code Ann. § 33–23–201. Resolution of the coverage issue herein necessarily turns on whether Georgeson's injuries arose out of the use of Channel Communications' truck and trailer.[6]

The meaning of the term "use", as contemplated in an automobile liability policy, has been the subject of extensive litigation.

**5.** Fidelity asserts the Montana Supreme Court, in *Chilberg v. Rose,* 273 Mont. 414, 903 P.2d 1377 (1995), reaffirmed the validity of the "occupancy" restriction. Fidelity's reliance on *Chilberg* is misplaced, as that decision is distinguishable from the instant action.

**6.** Fidelity asserts Georgeson did not have permission to string cable at the intersection

where the accident occurred and, as a result, he was not a permissive user of a covered vehicle at the time of the accident. The court is unpersuaded by Fidelity's argument and hereby rejects the same. *See, Horace Mann Insurance v. Hampton,* 235 Mont. 354, 767 P.2d 343, 345–346 (1989).

Courts generally agree that the term "use" is inherently ambiguous, and must therefore be construed broadly to include all proper uses of a vehicle. *Farmers Ins. Exchange v. Tibi*, 20 M.F.R. 96, 104–105 (D.Mont.1995), *citing*, APPLEMAN, INSURANCE LAW AND PRACTICE, § 4316 (1979); *Union Mutual Fire Insurance Company v. Commercial Union Insurance Company*, 521 A.2d 308, 310 (Me.1987). Premised upon this liberal construction, courts have held that an injury arises out of the use of a insured vehicle, for insurance purposes, if it is shown that some causal connection exists between the liability-causing event and a proper use of the vehicle. *Id.* at 105, *citing*, *Watson v. Watson*, 326 So.2d 48, 49 (Fla.App.1976); *Annotation, Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10 (1982).

■ Whether an accident is caused by the use of a vehicle must be determined on a case-by-case basis. *Bredemeier v. Farmers Ins. Exchange*, 950 P.2d 616, 617 (Colo.App.1997). "An injury arises out of the use of a vehicle within the provisions of an automobile insurance policy when a causal connection is reasonably apparent between the use to which the vehicle is being put and the resulting injury" *Id.*, *quoting*, G. Couch, *Cyclopedia of Insurance Law* § 45:56 (R. Anderson 2d ed.1981). To prove causation under such circumstances, a plaintiff need only show that the injury originated in, grew out of, or flowed from the use of a vehicle, not that the vehicle itself was the source of the injury. Thus, the vehicle need only be integrally related to the claimant's activities and the injury at the time of the accident. *Id.*, *citing*, *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo.1995). The causal requirement is more than "but-for" causation, but less

than legal, proximate cause. *See, Hawkeye–Security Ins. Co.*, 124 Idaho 953, 866 P.2d 976, 980 (1994) ("It is not enough to say that 'but for' the use of the automobile, the injury would not have occurred."); *Barry v. Illinois Farmers Ins. Co.*, 386 N.W.2d 299, 301 (Minn.App.1986) ("[A] causal connection is less than proximate cause and is established if the injury is a natural and reasonable consequence of the use of the vehicle."); *Kolkin v. American Family Ins. Co.*, 347 N.W.2d 538, 540 (Minn.App.1984) (explaining " 'causal connection' is less than proximate cause but more than the vehicle being the 'mere situs' of the injury").

■ Upon review, the court concludes the causal connection between the accident and Georgeson's use of Channel Communications' truck and trailer is more than sufficient to trigger coverage herein. In so holding, the court notes the term "use" is undefined in the subject policy and, as a result, necessarily gains its definition from the expected uses to which an insured vehicle will be put. *See, Farmers Ins. Exchange v. Tibi, supra*, 20 M.F.R. 103.[7] Channel Communications' truck and trailer were used to transport cable to work sites, where the cable remained attached to the spool resting on the attached trailer. Moreover, the truck was used to raise and tension the cable as work proceeded along the "run" of utility poles. Accordingly, the insured vehicle, at the time of the accident, was integrally related to Georgeson's activities and his resultant injuries.

Fidelity asserts the distance between Georgeson and the truck, approximately 150 feet, necessarily precludes a finding that Georgeson was "using" the vehicle at the time of the accident. Other jurisdictions have applied the causal connection test and concluded that even though the insured was not in close proximity to the vehicle, the insured was entitled to auto-

---

7. The Fidelity policy was a "commercial insurance policy" issued to cover the business of Channel Communications, a company engaged in, *inter alia*, the business of installing cable and related fiber-optic cable on utility poles. It is beyond dispute that the underlying accident occurred while Channel Communications' truck and trailer were being utilized in a manner consistent with standard practices and procedures.

**1268**

mobile liability coverage. *Viking Ins. Co. of Wisconsin v. Coleman,* 927 P.2d 661, 665 (Utah App.1996). In *Aetna Casualty & Surety v. McMichael,* 906 P.2d 92 (Colo. 1995), the court held that proximity was not dispositive, rather it "is only one factor to be weighed as part of the totality of the circumstances present in the case." *McMichael, supra,* 906 P.2d at 103.[8]

### CONCLUSION

Viewing the totality of the circumstances presented, the court is left with the unavoidable conclusion that a causal connection existed between the underlying accident and Georgeson's use of Channel Communications' truck and trailer. Accordingly, the court concludes Georgeson was "using" a covered vehicle at the time of the accident and, as a result, is an omnibus insured under the liability coverage provisions of the subject insurance policy. Finally, as an insured under the liability coverage portion of the subject policy, Georgeson is entitled to coverage under the uninsured motorist endorsement.

Therefore, for the reasons set forth herein, the court concludes the plaintiffs' motion for summary judgment be, and the same hereby is, GRANTED with respect to the coverage issue. Likewise, Fidelity's summary judgment motion upon the same issue is hereby DENIED.

IT IS SO ORDERED.

---

**8.** In *McMichael,* an employee was provided a truck by his employer to carry tools, special barricades and cones. The employee, after parking the truck in the center median of a highway, turned on the vehicle's overhead beacon and emergency flashers, removed a concrete saw, and began to cut a concrete joint in the road directly in front of his truck. Shortly thereafter, a vehicle left the roadway and struck the employee, resulting in serious bodily injuries. After settling with the vehicle's driver for his policy limits, the employee sought underinsured motorist coverage benefits from his employer's automobile insurance policy. In concluding the employee was "us-ing the truck in a manner not foreign to its inherent purpose at the time of the accident," the court noted the truck was equipped with devices to alert traffic of roadwork in progress, the truck was commonly used as a barricade to protect road workers, and the safety devices were activated. *McMichael, supra,* 906 P.2d at 103. Accordingly, the court concluded the plaintiff was using the truck for warning and protection at the time of the accident and, as a result, held the employee's injuries arose out of his use of the truck, thereby entitling him to underinsured motorist coverage. *Id.*