**TRAVELERS INSURANCE COMPANY,**
**Appellee,**

**v.**

**AETNA CASUALTY AND SURETY**
**COMPANY, Appellant.**

Supreme Court of Tennessee.

Feb. 20, 1973.

Richard D. Taylor, Glasgow, Adams & Taylor, Nashville, for appellee.

William J. Harbison, Trabue, Minick, Sturdivant & Harbison, Nashville, for appellant.

## OPINION

HUMPHREYS, Justice.

This is a suit originally brought by the Travelers Insurance Company for a declaration as to which of two insurance companies afforded coverage for a tort resulting in a judgment and the expense of defending the suit in which the judgment was pronounced, Travelers having paid the

judgment obtained by the injured party. The Chancellor below held that the automobile liability carrier, Aetna Casualty and Surety Company, afforded coverage and the homeowner carrier, Travelers, excluded coverage. The case now comes before this Court by way of direct appeal from the ruling of the Chancellor.

The facts were undisputed and stipulated by the parties. On or about July 17, 1968, the appellee, Travelers Insurance Company, had in effect a homeowner's policy affording liability coverage to Ann S. Muehlman and relatives who were members of her household. That policy *excluded* liability arising out of the "ownership, maintenance or use" of automobiles including "loading and unloading." The appellant, Aetna Casualty and Surety Company, had in effect a comprehensive commercial insurance policy covering Ray Muehlman's business operation. That policy, extended to family members in their use of automobiles by way of special endorsement, *included* liability arising out of the "ownership, maintenance, or use, including loading or unloading," of any automobile.

On July 17, 1968, Raymond Louis Muehlman, the son of Ray and Ann S. Muehlman and a member of their household, was on a hunting trip with another Vanderbilt student, Robert J. Rapai. The latter was injured when a shotgun young Muehlman was placing inside Rapai's automobile through the rear window on the passenger's side discharged for some unknown reason.

In a subsequent suit in the Circuit Court of Davidson County, Rapai recovered a judgment of $3,023.60 and court costs of $35.25. Travelers, the homeowner carrier, undertook the defense of that suit under a reservation of rights agreement, paid the judgment, and sued Aetna, the automobile liability carrier, for the amount of the judgment, costs, and expenses incurred in defending the suit, the total amount being $4,318.85.

The Chancellor held that injuries resulted from the use of an automobile as defined in Aetna's policy and that coverage was afforded by that policy. The applicable policy provisions are as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages to which this insurance applies, caused by an occurrence and arising out of the *ownership, maintenance or use, including loading and unloading, of any automobile,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . ." (Emphasis added.)

Aetna's special endorsement extending coverage to family members in their operation of private passenger vehicles reads as follows:

"(1) The insurance also applies to a relative, an insured, while using a private passenger automobile . . . not owned or furnished for the regular use of any relative; provided his actual operation or (if he is not operating) the other actual use of such automobile is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and provided further such use is not in any business or occupation of the relative."

The Chancellor further held that Travelers' policy specifically excluded coverage. Its specific exclusions provided:

"Section II of this policy does not apply:

(b) under Coverage E [personal liability] and *F, to the ownership, maintenance, operation, use, loading or unloading of* (1) *automobiles* . . . while away from the premises or the ways immediately joining, except under Coverage E with respect to operations by inde-

pendent contractors for non-business purposes of an Insured not involving automobiles owned or hired by the Insured. . . . " (Emphasis added.)

Aetna, the appellant, contends that the injuries did not result from the use of an automobile as defined in its policy. We, however, are of the same opinion as the Chancellor as pertains to that policy, and our decision must, necessarily be predicated upon the definition of the terms "arising out of the ownership, maintenance or use" of a vehicle, including "loading and unloading."

It is a basic rule of contracts that a written agreement, in case of doubt as to the meaning thereof, be interpreted against the party who has drawn it. Am. Jur., Contracts, § 252. That principle is frequently applied to insurance contracts, and in particular to the phrase "arising out of the ownership, maintenance, or use" of a vehicle in liability insurance contracts. Am.Jur., Insurance § 258; Richland Knox Mutual Insurance Co. v. Kallen, 376 F.2d 360 (6th Cir. 1967); Fidelity and Casualty Co. v. Lott, 273 F.2d 500 (5th Cir. 1960); American Fire & Casualty Co. v. Allstate Insurance, 214 F.2d 523 (4th Cir. 1954). The term "arising out of the use" in liability policies has generally been held to be a broad, comprehensive term meaning "origination from," "having its origin in," "growing out," or "flowing from." Insurance Company of North America v. Royal Indemnity Co., 429 F.2d 1014 (6th Cir. 1970); U. S. Fidelity and Guaranty Co. v. Western Fire Insurance Co., 450 S.W.2d 491 (Ky.1970); Jamestown Mutual Insurance Co. v. General Acc. Fire and Life Assur. Corp., 66 Misc.2d 952, 332 N.Y.S.2d 806 (1971). The term "use", then, has been a general catch-all term construed by the courts to include all proper uses of a vehicle. Appleman, Insurance Law and Practice, § 4316 (1962). That broad construction is made possible by the inherent ambiguity of the term, and further, that

ambiguity calls for a strict construction against the party who drew the contract.

Aetna further claims that the accident occurred as a result of "loading" the vehicle, and they disclaim liability in that their special endorsement did not include "loading and unloading." The general rule is, however, that where a policy fails to specifically mention loading and unloading, those terms are within the general catch-all term "use." Panhandle Steel Products Co. v. Fidelity Union Casualty Co., 23 S.W.2d 799 (Tex.Civ.App.1929); see generally, Anno., 89 A.L.R.2d 150, § 9(h).

In determining whether an act constitutes loading or unloading, the courts have applied two basic tests: "coming to rest" and "complete operation."

Under the "coming to rest" doctrine, only that part of the operation which constitutes the actual lifting and placing of the article in the vehicle or lifting and removing the article from the vehicle until the goods come to rest in the vehicle, or every connection with the vehicle ceases, are part of the operation. While this test is in the minority, there is authority that it exists in Tennessee. See, Hinton v. Liability Assur. Corp., 166 Tenn. 324, 62 S.W.2d 47 (1933). Under the "complete operations" doctrine, the entire process involved in moving the goods is covered. In commercial situations, it extends from the moment the insured takes possession until delivered at the point of destination. For purposes such as the instant case, it includes acts preparatory to loading or unloading. See, Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D.Mich.1961). There can be no doubt that the facts in the instant case bring it within the scope of either test.

Having determined that the accident occurred while the insured was loading the vehicle and making use of it, causal connection between that use and the accident or injury must be found before recovery can be had. The cases are in general

agreement that a relationship must exist between an accident or injury and use of the vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle. Richland Knox Mutual v. Kallen, supra; *See generally*, Anno., 89 A.L.R.2d 150 § 4(a). The cases are in further agreement, however, that the causal relationship need not be proximate. See, 89 A.L.R.2d 150, §§ 4, 6. The test as cited in encyclopedic references to "loading or unloading" is that the "loading or unloading" must be the efficient and predominating cause of the accident. 7 Am.Jur.2d 397, Automobiles, § 90. Case law indicates that the injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something distinctly remote. Merchants Co. v. Hartford Accident and Indemnity Co., 187 Miss. 301, 188 So. 571 (1939), 192 So. 566 (1940). Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the vehicle.

It was the opinion of the Chancellor, and it is ours, that when young Muehlman was loading his shotgun into the vehicle, he was making "use" of the vehicle within the definition of that term as applied to automobile liability policies and, therefore, within the terms of Aetna's policy. The vehicle was being used to transport the young men and their weapons on a hunting trip. That use being proper, it was reasonable and natural that they would be exposed to some danger as a result of that use. The requisite causal relationship is present, the vehicle being used as a receptacle for the gun and the injury "flowing from" that use. In conclusion, it is well to note that the courts have been liberal in finding this "but for" relationship and in allowing recovery against automobile carriers. That fact is due to the inherent ambiguity in the term "arising out of use"; therefore, the term is strictly construed against the party who drew the contract.

Turning to the coverage afforded by the homeowner carrier, Travelers Insurance Company, we are forced to disagree with the conclusion and finding of the Chancellor.

There are few reported decisions under facts such as those in the instant case which involve a homeowner's policy exclusively. This undoubtedly is due to the fact that, since an automobile would have to be, by definition, involved before a homeowner's exclusion clause was in question, an automobile carrier is also invariably involved. Some courts have concluded that, if one carrier is liable for "use" as above defined, the other is not because it excludes liability for "use." These courts have reached this conclusion because the same terms are used in both policies. So they have applied the same definitions and standard of causation to both types of carriers. That conclusion is wrong as the definitions and the standard of causation used have grown out of cases in which strict construction was being applied against automobile liability carriers who drew the contracts in question, presumptively, to provide insurance coverage. Those terms so defined in reference to automobile carriers should not be applicable to a homeowner's policy which seeks to exclude coverage for liability for an injury not proximately, causally connected with the "use" or "loading" of an automobile.

It has long been the rule in this state that in construing an insurance policy, uncertainties or ambiguities must be construed strongly against the insurer and in favor of the insured. That policy was first announced in Citizens Insurance Co. v. Ayers, 88 Tenn. 728, 13 S.W. 1090 (1890), wherein the Court said:

"It is elementary that if there be any ambiguity in the policy, it will be resolved against the company issuing it, and will be so construed as to give to the assured that which is the sole object of insurance, so far as the assured is concerned, to-wit, indemnity."

That policy has been reiterated and reaffirmed through the years. Harkavy v. Phoenix Ins. Co., 220 Tenn. 327, 417 S.W.2d 542 (1967); American Cas. Co. of Reading, Pa. v. Cutshall, 205 Tenn. 234, 326 S.W.2d 443 (1959); Woods v. City of LaFollette, 185 Tenn. 655, 207 S.W.2d 572 (1949); Life and Cas. Ins. Co. v. Cantrell, 166 Tenn. 22, 57 S.W.2d 792 (1933); Pacific Mutual Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S.W. 204 (1905).

Specifically, this Court has held that exceptions, exclusions, and limitations in policies of insurance are to be most strongly construed against the insurer. Hahn v. Home Life Ins. Co. of New York, 169 Tenn. 232, 84 S.W.2d 361 (1935). In Sturgill v. Life Insurance Co. of Georgia, 465 S.W.2d 742 (Tenn.Ct.App.1970), the court stated:

"The terms and provisions of a policy drafted by the insurance company must be construed strongly in favor of the insured."

"A provision in a policy limiting or reducing coverage is to be construed strongly against the insurer."

■ There can be little doubt that the terms "use" and "loading and unloading" are ambiguous, particularly in light of the courts' major efforts to define and interpret those terms. Those terms have taken on varied meanings and have been subjected to varied applications and tests in construing coverage under automobile liability policies. That being true, under facts such as those in the instant case, homeowner policies of insurance should stand on their own language and exclusions should be strongly construed against the insurer. After properly construing the ambiguous terms strictly against automobile liability carriers to provide coverage, some courts have conversely, by allowing homeowner carriers the benefit of the same construction, construed homeowner policies, bought for insurance coverage against nonvehicular liability, strictly

against the insured. In keeping with the policy of the law, the inverse should be true. By holding Travelers liable in the instant case, we are neither redefining the terms nor changing the standard of causation. We are, rather, merely strictly construing those ambiguous terms and the standard of causation against the homeowner carrier standing by itself. As pointed out previously in Ayers, the sole object of the insured in obtaining insurance is indemnity. To exclude coverage, exclusion clauses must be drafted in clear and unambiguous terms. The terms being ambiguous, they must be strictly construed against the insurer.

Applying that rationale to the facts in the instant case, we conclude that Travelers must also be held liable. According to the stipulated facts, the gun discharged for some unknown reason. The accident could have occurred anywhere, the precise reason why homeowner's insurance is procured. As stated previously from 7 Am.Jur.2d 397, Automobiles, § 90,

"An accident is causally connected with the process of loading or unloading only if the loading or unloading was the *efficient or predominating* cause of the accident." (Emphasis added.)

We are unable to agree that a mere connection with the loading of a vehicle, which is sufficient to allow recovery against an automobile liability carrier, also allows a homeowner carrier to exclude coverage. Neither does logic demand, nor will the law allow such a result.

■■ We hold that for a homeowner's policy of insurance to exclude coverage because of use, loading or unloading of an automobile, that use, loading or unloading must be the efficient and predominating cause in the strict sense of those terms. It is clear from the facts in the instant case that while the injury was connected with the use of the vehicle during the act of loading, neither that use nor act of loading was the efficient and predominating cause,

the requisite causal relationship necessary to bring it within the exclusionary provisions of the policy.

We hold that both Travelers and Aetna are primarily liable and that the judgment, interest, costs and expenses should be prorated according to the coverage afforded by the policies of insurance.

DYER, C. J., COOPER, S. J., and CHATTIN and McCANLESS, JJ., concur.