MR. CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Plaintiff Truck Insurance Exchange (TIE) appeals a November 5, 1986, amended judgment of the Thirteenth Judicial District, Still-water County, granting Nelson’s motion for summary judgment. We reverse.
TIE presents a single issue for our review:
Did the District Court err in concluding that a 1979 Ford Bronco was an “owned automobile” within the meaning of Dennis Jordet’s insurance policy?
Dennis Jordet and his wife farm near Reedpoint, Montana. Jordet is insured under a comprehensive farm policy issued by TIE. In April of 1981, his wife’s sixteen-year-old sister, Patty Kent, moved in with the Jordets and began attending high school in Columbus. In May of 1981, Kent decided to buy a 1979 Ford Bronco from Ryan Oldsmobile in Billings. Kent traded-in her personal 1975 Firebird as a down payment. However, Ryan Oldsmobile required Jordet to sign the installment sales contract because Kent was an unemployed minor.
Jordet paid the registration fees, and Kent paid him back. Kent also made the first car payment, which came due on June 28, 1981. Both Jordet and Kent are named on the owner’s certificate of registration issued on June 15, 1981, and the Montana certificate of title, issued on July 8, 1981. Jordet and TIE specifically discussed and mutually agreed to not insure the Bronco under the Jordet/TIE policy. After TIE and Jordet mutually agreed to not insure the Bronco under the Jordet/TIE policy, the Bronco was insured through Guaranty National Insurance Company.
On July 10, 1981, Kent’s friend, Kathy Nelson, was injured while a passenger in the Bronco driven by Kent. Guaranty National paid the limits of its policy to Nelson on behalf of Kent. A separate policy issued to Kent’s father also paid its limits to Nelson. Nelson later filed an action against Jordet in Silver Bow County, claiming *235 that Jordet owned Kent’s Bronco for insurance purposes and that Nelson was entitled to additional recovery under Jordet’s policy.
Jordet’s insurance policy, in Section II(111)(3), provides:
“With respect to the insurance afforded by this policy under COVERAGE D1 [arising out of the ownership, maintenance, or use of any automobile], the unqualified word “insured” includes (a) the named insured and, as respects the ownership, maintenance or use of any automobile covered by this policy, his relatives while residents of his household; (b) any person while using an owned automobile or a hired automobile, provided the actual use of the automobile is by the named insured or with his permission.” [Emphasis added.]
The policy’s definition section with respect to Coverage Dl states: “Owned automobile means an automobile owned by the named insured.” Jordet is the named insured, but the Bronco is not listed among the described vehicles which are specifically insured under' the TIE policy. TIE sought a declaratory judgment that Kent’s Bronco was not covered within the meaning of its policy. Eventually, both parties moved for summary judgment, which the District Court granted in favor of Nelson. On November 5,1986, the District Court concluded that the Bronco was an owned automobile under the Truck Insurance Exchange policy and that the policy provides coverage to Kent.
The Silver Bow County damage case is still pending. The Stillwater County District Court’s judgment provides Nelson with supplementary coverage under Jordet’s insurance policy.
On appeal, TIE contends that the Bronco was not owned by Jordet within the meaning of the insurance policy. TIE argues that intent is prerequisite to the existence of a contract, and is the principal guide to interpretation of its insurance policy. TIE asserts that the question of ownership under an insurance policy depends upon use, possession and control, rather than bare legal title.
Nelson contends that ownership encompasses the right of control, and therefore Jordet’s failure to exercise control does not diminish legal ownership for the purposes of insurance coverage. Nelson argues that the motor vehicle statutes, Title 61, Chapter 3, MCA, create a presumption of ownership in Jordet. Nelson asserts that Jordet financed the Bronco, arranged Kent’s insurance with Guaranty National, and test drove the Bronco.
Both TIE and Nelson admit that Kent and Jordet were joint owners of the Bronco, and thereby frame the central question: Does the *236 term “owned automobile” in Jordet’s insurance policy include the jointly-owned Bronco?
The interpretation of a contract is a question of law. When presented with an issue of law on appeal, we are not bound by the conclusions of the District Court but are free to draw our conclusions from the evidence presented. Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 423, 584 P.2d 1298, 1300.
Our review of this issue is guided by Safeco Ins. Co. v. Lapp (Mont. 1985), [215 Mont. 196,] 695 P.2d 1310, 42 St.Rep. 289. In Lapp, a car dealership failed to process the title documents on a car it sold. The sole issue in Lapp was whether the dealership remained the owner within the meaning of its insurance policy. The Lapp Court noted that the motor vehicle statutes of Title 61, Chapter 3, MCA, are aimed primarily at public regulation of automobiles. The Court held that the statutes are relevant but not determinative of ownership for insurance purposes. The Court emphasized contractual intent and ruled that the dealership was not the owner for insurance purposes. “Ownership for insurance purposes can be determined by the intent of the parties and the language of the insurance contract.” Lapp, 695 P.2d at 1312.
In the instant case, we will not inject vehicle certification statutes into the insurance contract and thereby distort the coverage terms. Section 28-3-301, MCA, mandates that the intent of the parties shall govern the contract’s interpretation: “A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.” We are faced with ill-defined contract terms. Where the terms are ambiguous, we may clarify them with extrinsic evidence of the parties’ intentions. Section 28-2-905(2), MCA.
Those intentions are revealed in the record. Contrary to Nelson’s assertions, Jordet and TIE did not contract to insure the Bronco, but affirmatively sought to avoid insuring it. They specifically discussed insuring the Bronco, but rejected the idea. In his affidavit, Jordet stated: “On the advice of our insurance agent, Patty obtained her own insurance on the car in her own name through a different company. The car was not on my policy and I did not expect or intend the policy to cover it.” The record also reveals that Kent decided to purchase separate insurance. We find that the Bronco was not insured within the contemplation of the contracting parties.
In her brief, Nelson repeatedly stresses that Jordet’s signature on the installment sales contract conclusively places the Bronco on the *237 TIE policy. However, at issue in this case is the insurance contract, not the purchase contract. The purchase of property and the insurance of property are distinct transactions.
Jordet was a solvent debtor, whose signature merely secured Kent’s purchase. In her deposition, Kent testified:
“Q. Did the salesman suggest that Dennis [Jordet] sign?
“A. Well, either that, or I didn’t get the Bronco.”
The purchase contract is essentially irrelevant to the acquisition of insurance. We will not allow the purchase agreement to dictate the interpretation of the insurance agreement. We find that Jordet’s signature on the installment sales contract does not establish ownership for insurance purposes.
Jordet’s joint ownership was an accommodation to allow Patty Kent to finance her purchase of the Bronco. Kent paid the down payment, repaid the registration and license fee, made the first and only installment payment, purchased separate insurance with Guaranty National, held the title certificate, possessed the only keys, and drove it exclusively. Jordet and Kent agreed that the Bronco was under the sole use and control of Kent. She repeatedly testified that she considered herself the sole owner of the Bronco.
“Q. Now, when you were buying the Bronco, was it your intention to buy the car for yourself?
“A. Yes.
“Q. Were you buying it for anybody else but yourself?
“A. No.
“Q. Did you ever intend it to be purchased for Dennis’ benefit?
“A. No.”
Implicit in ownership is the ability to control how, when, where and by whom the vehicle will be used. Section 70-1-101, MCA, states: “The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others.” Jordet never exercised any of the indicia of ownership which would be compatible with his insuring the Bronco. “[A]n insurance policy, like any other contract, must be given an interpretation which is reasonable and which is consonant with the manifest object and intent of the parties.” National Farmers Union Property & Gas Co. v. Colbrese (9th Cir. 1966), 368 F.2d 405, 411, cert. denied, (1967), 386 U.S. 991, 87 S.Ct. 1306, 18 L.Ed.2d 336.
We hold that the Bronco was not an “owned automobile” within the meaning of Jordet’s policy with TIE. The amended judgment entered by the District Court on November 5, 1986, is reversed.
*238 MR. JUSTICES HARRISON, WEBER, GULBRANDSON and McDonough concur.