**FIRE INSURANCE EXCHANGE, a Reciprocal and Inter–Insurance Exchange, Plaintiff,**

v.

**Pierre TIBI, Jonathan Kayser, and Allstate Insurance Company, Defendants.**

**No. CV–93–141–GF–PGH.**

United States District Court, D. Montana, Great Falls Division.

Oct. 25, 1995.

Lyman H. Bennett, III, Morrow, Sedivy & Bennett, PC, Bozeman, MT, for Plaintiff.

Barry A. MacBan, Michael L. Barth, Weyl, Guyer, MacBan & Olson, Phoenix, AZ, David A. Veeder, Veeder Law Firm, PC, Thomas D. Gai, Office of the Yellowstone County Attorney, Billings, MT, K. James Malady, III, Malady Law Office, Bennington, VA, Steve Reida, Landoe, Brown, Planalp & Braaksma, PC, Bozeman, MT, for Defendants.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

In the present declaratory judgment action the court is called upon to determine whether certain personal injury claims advanced by defendant Jonathan Kayser against defendant Pierre Tibi are covered under a policy of automobile liability insurance issued by defendant Allstate Insurance Company ("Allstate"); and a policy of homeowner's insurance issued by the plaintiff, Fire Insurance Exchange. The subject claims emanate from a bullet wound Kayser sustained on a hunting trip with Tibi. Jurisdiction is vested in this court pursuant to 28 U.S.C. § 1332, in conjunction with 28 U.S.C. §§ 2201 and 2202.

Presently before the court are cross-motions for summary judgment submitted by all parties. The motions were initially referred to United States Magistrate Judge Robert M. Holter for a recommended decision pursuant to 28 U.S.C. § 636. When Magistrate Judge Holter concluded that the motions should be denied, the parties filed timely objections in accordance with Fed.R.Civ.P. 72(b).

Having conducted a *de novo* review of the record, the court deems it appropriate to GRANT the motions for summary judgment submitted by Tibi and Kayser, and DENY the motions for summary judgment submitted by Fire Insurance Exchange and Allstate.

## BACKGROUND

The undisputed facts underlying this action establish that Tibi, an Arizona resident, engaged the services of Cabinet Divide Outfitters to provide a guided antelope hunt near Turner, Montana, in October of 1992. The owner of Cabinet Divide Outfitters, Terry Kayser, arranged to have his son Jonathan Kayser act as Tibi's guide. A 1974 Chevrolet Suburban, titled in the name of Robert Colwell, was provided by Terry Kayser for use by Jonathan Kayser and Tibi in connection with their hunting trip.

On the morning of October 19, 1992, Tibi successfully harvested both a buck and a doe antelope. After field dressing the doe antelope, Jonathan Kayser drove the Suburban to where the buck antelope was located. At that juncture, Tibi took off his coat and shirt and placed them on the front seat of the Suburban together with his knapsack and rifle. The men then proceeded to field dress the buck antelope and load the carcass in the Suburban. After the antelope was in the Suburban, Kayser walked to the driver's side of the vehicle where he stopped to remove some dried antelope blood from his hands. Contemporaneously, Tibi opened the front passenger door of the Suburban and began repositioning his coat, knapsack and shirt, from the front seat of the vehicle to the back seat, so he could occupy the front passenger position. As Tibi was moving his personal belongings, his rifle discharged inside the Suburban.[1] The bullet that exited the gun passed through the metal panel between the driver's side front and rear windows, striking Kayser, who was standing outside the vehicle near the driver's door.

At the time pertinent to the accident, Tibi was a named insured under a homeowner's insurance policy issued by Fire Insurance Exchange.[2] The homeowner's policy provides personal liability coverage in the sum of $500,000 per occurrence. The Suburban was listed as an insured vehicle in an automobile liability insurance policy issued by Allstate to Robert and Suzanne Colwell.[3] The automobile policy provides bodily injury liability coverage in the sum of $100,000 per individual, and $300,000 per occurrence.

Subsequent to the shooting accident, Kayser instituted a negligence action against Tibi in this court alleging the injuries he sustained were caused by the negligent handling of a rifle by Tibi.[4] The present declaratory judgment action followed.

## DISCUSSION

 At the outset, the court notes that the construction of insurance contracts in Montana[5] is governed by the general law of contract interpretation contained in Title 28, Chapter 3, Montana Code Annotated, and the case law which has developed thereunder in the context of insurance.[6] Accordingly, the interpretation of insurance policies is governed by several broad principles. First, if the language employed in an insurance contract is clear, the language controls, and any expectation which is contrary to the language is not "objectively reasonable." *Wellcome v. The Home Insurance Co.,* 257 Mont. 354, 849 P.2d 190, 193 (1993). Second, if a provision in an insurance policy is ambiguous, all ambiguities must be construed against the insurer. *Atcheson v. Safeco Ins. Co.,* 165 Mont. 239, 527 P.2d 549 (1974). The determination of whether an ambiguity exists requires an examination of the language utilized from the viewpoint of the consumer of average intelligence not trained in the law or in the insurance business. *Whispering Creek Condomini-*

1. The record is unclear whether the rifle that discharged was included among the items Tibi was attempting to reposition in the back seat of the Suburban. It is Kayser's recollection that Tibi was moving both the rifle and the clothing when the rifle discharged. Tibi contends the rifle discharged as he was lifting the clothing off the gun which was located on the front seat of the Suburban.

2. The homeowner's insurance policy issued by Fire Insurance Exchange is more particularly described as policy No. 88–90902–70–81.

3. The Allstate policy, which includes Amendatory Endorsement AU1698–2, is more particularly described as policy No. 007616987.

4. *See, Kayser v. Tibi,* Cause No. CV–94–015–GF–PGH.

5. The law of Montana governs the substantive rights and obligations of the parties to this diversity action. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

6. Mont.Code Annot. § 33–15–316 provides:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application which is a part of the policy.

*um Owner Assoc. v. Alaska National Ins. Co.*, 774 P.2d 176 (1989); *Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982). If language in the policy is capable of more than one construction, an ambiguity exists. *Farmers Union Mutual Ins. Co. v. Oakland*, 251 Mont. 352, 825 P.2d 554, 556 (1992). Finally, all words of limitation and exclusions in an insurance policy must be strictly construed against the insurer regardless of whether or not they are ambiguous. *Bauer Ranch v. Mountain W. Farm Bur. Mut. Ins.*, 215 Mont. 153, 695 P.2d 1307, 1309 (1985). Cognizant of these principles of contract construction, the court now turns to the coverage issues presented.

## A. *The Allstate Policy*

The coverage agreement in the Allstate automobile liability policy states:

> "Allstate will pay for all damages an insured person is legally obligated to pay because of bodily injury or property damage ... arising out of the ownership, maintenance or use, loading or unloading of an insured auto."

Allstate argues that its auto policy fails to provide coverage to Tibi for the personal injury claims advanced by Jonathan Kayser because: (i) Tibi was not an "insured person" under the Allstate policy; and (ii) the injuries sustained by Kayser did not arise "out of the ... use, loading or unloading of an insured auto." Additionally, Allstate argues that the auto policy contains three exclusionary provisions which operate to preclude coverage. The court shall address each argument in turn.

### i) Was Tibi an insured person under the Allstate policy?

The Allstate automobile liability policy defines "insured persons" as follows:

7. The terms "you" and "your" are defined in the Allstate policy to mean "the policyholder named on the declarations page and that policyholder's **resident** spouse."

8. The term "insured auto" is defined in the Allstate policy as including any automobile described on the declarations page of the policy.

1. While using **your**[7] insured **auto**[8]:
 a) **you,**
 b) any **resident,** and
 c) any other person using it with **your** permission.
2. While using a non-owned **auto:**
 a) **you,**
 b) any **resident** relative using a four wheel private passenger **auto** or **utility auto.**
3. Any other person or organization liable for the use of an insured **auto** if the **auto** is not owned or hired by this person or organization provided the use is by an insured person under **1.** or **2.** above.

The determination of whether Tibi was an "insured person" under the Allstate policy hinges on whether Colwell owned the Suburban on the date of the accident. If Colwell owned the Suburban, Tibi would have been a permissive user of the vehicle, and thus an "insured person", as defined under paragraph 1(c) of the Allstate policy, referenced above. Conversely, if the Suburban was owned by Terry Kayser, as Allstate contends, Tibi would not have been an "insured person" under either paragraphs 1, 2 or 3 of the Allstate policy.

■■■ The owner of a vehicle, for insurance purposes, is to be determined, if possible, by reference to the specific language employed in the insurance policy. *Colonial Insurance Company of California v. Blankenship*, 231 Mont. 469, 753 P.2d 880, 882 (1988), *citing, Safeco Ins. Co. v. Lapp*, 215 Mont. 196, 695 P.2d 1310, 1312 (1985). Because the Allstate policy at issue fails to expressly define how the owner of an insured vehicle is to be determined, the court is constrained to determine ownership in accordance with the common meaning of that term.[9] *Bauer Ranch v. Moun-*

9. "[A]n insurance policy, like any other contract, must give an interpretation which is reasonable and which is consonant with the manifest object and intent of the parties." *National Farmers Union Property & Cas. Co. v. Colbrese*, 368 F.2d 405, 411 (9th Cir.1966).

*tain W. Farm Bur. Mut. Ins.*, 215 Mont. 153, 695 P.2d 1307 (1985). In undertaking this task, the court is guided by the prior pronouncements of the Montana Supreme Court and the prescriptions of the Montana Legislature. The state's highest court has stated, in construing a comprehensive farm insurance policy, that the owner of a vehicle is the person with "the ability to control, how, when and where and by whom the vehicle will be used." *Truck Insurance Exchange v. Nelson*, 228 Mont. 233, 743 P.2d 572, 575 (1987). The term "ownership" is similarly defined by statute as the "right of one or more persons to possess and use ... [a thing] to the exclusion of others." Mont.Code Ann. § 70–1–101.

Mindful of these definitions, the court now reviews the facts relevant to the determination of this issue. The record reveals that in September of 1992, Colwell drove his Suburban to Terry Kayser's ranch in Heron, Montana, where it was to be stored along with a boat. While at the Kayser ranch, Colwell gave Terry Kayser permission to use the Suburban in connection with Kayser's hunting guide business. Colwell also advised Terry Kayser that he would sell the Suburban for $1,000. Subsequently, Kayser began using the Suburban. Kayser was in possession of the Suburban when the referenced accident occurred on October 19, 1992. In the Spring of 1994 (approximately 1 ½ years after the accident), Kayser paid Colwell $1,000 for the Suburban. In exchange, Colwell tendered the certificate of title for the vehicle to Kayser.

Based upon these facts, it is the opinion of this court that Colwell owned the Suburban. At all times pertinent to this action, Colwell was in possession of the certificate of title for the vehicle, and the vehicle was registered in his name.

Allstate's contention, that Kayser owned the Suburban, is predicated solely upon Kayser's testimony, during a deposition, wherein he stated that his use of the Suburban was pursuant to an oral "lease-purchase" agreement. Allstate argues that the use of the Suburban by Kayser, under such an agreement, necessarily makes Kayser the owner of the Suburban, in view of the holding of the Montana Supreme Court in *Colonial Insurance Company of California v. Blankenship*, 231 Mont. 469, 753 P.2d 880, 882 (1988).[10]

The court finds Allstate's argument unpersuasive for several reasons. First, the record is void of any probative evidence that a purchase agreement existed between Colwell and Kayser, on the date of the accident. Conversely, it is reasonable to conclude that a purchase agreement did not come to fruition until the Spring of 1994, when the $1000 was paid by Kayser, and title to the Suburban was transferred by Colwell to Kayser. Second, assuming arguendo that a lease-purchase agreement existed between Kayser and Colwell on the date of the accident, there is no evidence, in the record, which would lead a reasonable person to conclude that Kayser had the right to possess or control the Suburban to the exclusion of Colwell. Third, although Kayser characterized his use of the Suburban, during the deposition, as pursuant to a "lease-purchase" agreement, he did not testify that he owned the Suburban on the date of the accident. To the contrary, Kayser specifically testified that Colwell was the owner of the Suburban when the accident occurred.[11]

10. In *Colonial*, the Montana Supreme Court stated that when a vehicle is the subject of a purchase agreement, the owner, for insurance purposes, is the person vested with the right of possession or control. 231 Mont. 469, 753 P.2d 880, 882–83.

11. Tibi also argues that Allstate should be estopped from challenging Colwell's owner-

ship of the Suburban because Allstate failed to raise the ownership issue in either its' Third Amended Complaint, or in its' Pre-discovery Disclosure Statement. Because the court concludes that Colwell was the owner of the Suburban at the time pertinent to this action, the court does not find it necessary to address the merits of Tibi's estoppel argument.

### ii) Did the injuries sustained by Jonathan Kayser arise out of the use, loading or unloading of an insured automobile, as contemplated in the Allstate policy?

Although neither this court nor the Montana Supreme Court has interpreted the policy language—"arising out of the . . . use, loading or unloading of an insured auto,"—in a case involving the accidental discharge of a weapon in or about a motor vehicle, courts from other jurisdictions have construed this language in cases factually similar to the case *sub judice*.[12] The determination whether this policy language operates to provide coverage to Tibi in this case requires a two-step inquiry. First, it must be determined whether the Suburban was in "use" when the shooting accident occurred. If this threshold question is answered in the affirmative, the court must next undertake to determine whether the shooting accident arose out of the use of the Suburban.

The meaning of the term "use", as contemplated in an automobile liability policy, has been the subject of extensive litigation. Courts generally agree that the term "use" is inherently ambiguous, and must therefore be construed broadly to include all proper uses of a vehicle. APPLEMAN, INSURANCE LAW AND PRACTICE, § 4316 (1979); *Union Mutual Fire Insurance Company v. Commercial Union Insurance Company*, 521 A.2d 308, 310 (Me.1987).

The shooting accident at issue occurred while the Suburban was being used to transport Kayser and Tibi on a hunting trip. The transportation of guns and hunters on a hunting trip has been recognized by courts as one of the proper uses associated with both an automobile and a truck. *Reliance Ins. Co. v. Walker*, 33 N.C.App.

15, 234 S.E.2d 206 (1977); *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn.1973); *Toler v. Country Mutual Insurance Company*, 123 Ill. App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909, 914 (1984). Accordingly, the court concludes that, at the time of the accident, the Suburban was in "use", for purposes of Allstate policy.

The term "arising out of" is also ambiguous, and has been construed as a comprehensive term which means "originating from", "having its origin in," "growing out of" or "flowing from." *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn.1973); *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014 (6th Cir.1970). Premised upon this liberal construction, courts have held that an injury arises out of the use of a insured vehicle, for insurance purposes, if it is shown that some causal connection exists between the liability-causing event and a proper use of the vehicle.[13] *Watson v. Watson*, 326 So.2d 48, 49 (Fla. App.1976); *See, also, Annotation, Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10 (1982). In a gun discharge case, the court's inquiry should focus upon whether the negligent act on the part of the insured which caused the accidental discharge of the firearm, may be considered a reasonable incident to a proper use of the vehicle. *National Family Insurance Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978). If the causal relationship exists, the resultant injuries are covered under the insured's automobile liability insurance policy.

This court has previously held that the use of the Suburban to transport

---

12. When presented with an issue of substantive state law as to which there has not been a definitive ruling by the Montana Supreme Court, this court must predict how the Montana Supreme Court will rule if confronted with that issue of law. *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.1985).

13. A showing of proximate causation, in the strict legal sense, is not required. *Toler v. Country Mutual Insurance Company*, 123 Ill. App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909, 913 (1984).

Kayser and Tibi on a hunting trip constituted a proper "use" of that vehicle for purposes of the Allstate automobile policy. Incidental to that use, it was both reasonable and foreseeable that weapons, and other hunting gear would be placed in, and moved about, the Suburban during the course of the hunting expedition. *Toler v. Country Mutual Insurance Company*, 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909, 914 (1984); *Union Mutual Fire Insurance Co. v. Commercial Union Insurance Co.*, 521 A.2d 308, 311 (Me.1987). Because the injury occurred while a firearm and/or hunting gear was relocated in the vehicle so Tibi could be seated in the Suburban in preparation for the trip home, the court is compelled to conclude the requisite causal connection exists.[14]

### iii) Policy Exclusions

■ Allstate also contends three exclusionary provisions contained in the Amendatory Endorsement to its auto policy operate to exclude coverage for the personal injury claims advanced by Jonathan Kayser. The referenced exclusions expressly state as follows:

**Allstate** will not pay for damages an insured person is legally obligated to pay because of:

1. **bodily injury** or property damage arising out of the use of **your** insured **auto** while used to carry persons or property for a charge ...;

2. **bodily injury** or property damage arising out of the use of a non-owned **auto** in any business or occupation of an insured person ...; or

3. **bodily injury** to an employee of any insured person arising in the course of employment ....

■ When called upon to construe an exclusionary provision in an automobile liability policy the court must, in the first instance, determine whether the exclusions are violative of Montana's Mandatory Liability Protection Act, Mont.Code Ann. § 61–6–301.[15] Section 61–6–301 provides that every owner of a motor vehicle registered and operated in Montana shall provide continuous liability coverage for bodily injury suffered by any person arising out of the use of a vehicle by either the owner or a person operating the vehicle

14. All of the gun discharge cases cited by Allstate, in which the requisite causal relationship was found to be absent, are inapposite to the present case.

In *State Farm Mut. Auto. Ins. Co. v. Centennial Insurance Co.*, 14 Wash.App. 541, 543 P.2d 645 (1975); and *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968), a gun discharged inside a moving vehicle when a passenger was attempting to unload the gun while in route home from a hunting trip. The requisite causal connection did not exist because the unloading of a gun in a moving vehicle was an illegal, unsafe and irrational activity, which was not a natural or reasonable incident to the use of the vehicle in connection with the hunting trip. *State Farm*, 543 P.2d at 647.

In *Hartford Fire Insurance Company v. State Farm Mutual Automobile Insurance Company*, 264 Ark. 743, 574 S.W.2d 265 (1978), an insured's child accidentally shot another child, while playing with a pistol stored inside a "camper" parked in the insured's carport. The requisite causal connection did not exist because the camper was not in use, but rather was merely the "situs" of the shooting acci-

dent, which could have occurred anywhere. *Id.* at 266–267.

In *Wall v. Nationwide Mutual Insurance Company v. Adams*, 62 N.C.App. 127, 302 S.E.2d 302 (1983), a passenger seated in an insured's vehicle intentionally shot a pedestrian that walked by the vehicle. The court concluded the requisite causal connection did not exist because the injury sustained by the pedestrian was "wholly disassociated from ... the vehicle's normal use". *Id.*, at 303.

15. The Mandatory Liability Protection Act provides, in pertinent part, as follows:

**61–6–301. Required motor vehicle insurance.**

"(1) ... an owner of a motor vehicle which is registered and operated in Montana by the owner or with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle, as defined in 61–1–102, in an amount not less than that required by 61–6–103, or a certificate of self-insurance issued in accordance with 61–6–143."

with the owner's permission. The minimum liability coverage that must be provided for the bodily injury claims of any one person, in any one accident is $25,000. Mont.Code Ann. § 61-6-103(2).[16]

 The purpose of the mandatory insurance law is to protect the public from uncompensated losses arising from the use of a motor vehicle. *Guaranty National Ins. Co. v. Kemper Financial Services*, 667 F.Supp. 714 (D.Mont.1987). So long as the terms of an automobile liability policy provide the statutorily required coverage, an insurer and its insured are free to enter an agreement that limits coverage under the liability insurance policy, to the extent the agreement is otherwise valid under the law. *See, Iowa Mutual Ins. Co. v. Davis*, 231 Mont. 166, 752 P.2d 166, 170 (1988); *Mid-Century Ins. Co. v. American Casualty Co.*, 152 Mont. 328, 449 P.2d 679, 682 (1969). If, however, an exclusionary provision in an automobile liability insurance policy operates in any fashion that is repugnant to the State of Montana's interest in protecting the innocent victims of auto-related accidents, the exclusionary provision is void and unenforceable. *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820, 823 (1983).[17]

An examination of the exclusions at issue, reveals that each exclusion effectively

operates to deprive those persons described in the exclusion of all liability coverage, including the minimum coverage prescribed under Mont.Code Annot. § 61-6-301. Consequently, each exclusion is necessarily invalid and unenforceable. Allstate must therefore afford liability coverage to Tibi to the full extent provided in the coverage provision of its' policy. *Leibrand v. National Farmers Union Property and Casualty Co.*, 272 Mont. 1, 898 P.2d 1220 (1995).

## B. *The Fire Insurance Exchange Policy*

The court must now determine whether coverage is also extant under the homeowner's insurance policy issued by Fire Insurance Exchange to Tibi. The homeowner's policy, in addition to providing the normal coverage for losses due to fire and theft, contains a comprehensive "personal liability" provision, which affords coverage for personal liability not expressly excluded under the policy.[18] Following the coverage provision is a lengthy list of exclusionary provisions. At issue is the exclusion that precludes coverage for bodily injury which:

> "results from the ownership, maintenance, use, loading or unloading of . . . motor vehicles." [19]

---

**16.** The minimum liability coverage requirements in Montana are established by the Motor Vehicle Safety—Responsibility Act, codified at Mont.Code Ann. §§ 61-6-101, *et seq.* Section 61-6-103(2) sets forth the minimum liability limits allowed by law at: (i) $25,000 because of bodily injury to or death of one person in any one accident; and (ii) $50,000 because of bodily injury to or death of two or more persons in any one accident.

**17.** In *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983), the Montana Supreme Court was called upon to determine whether a "household exclusion clause" contained in an auto liability policy was violative of Montana's Mandatory liability Protection Act. The household exclusion at issue excluded coverage for "bodily injury to any person who is related by blood, marriage, or adoption to [the insured], if that person reside[d] in the [insured's] household at the time of the loss."

The Court held the household exclusion was invalid because it ran afoul of the language of Montana's Mandatory Insurance Law which required the "liability policy protect against bodily injury and property damage to 'any person'." *Transamerica*, 656 P.2d at 823.

**18.** The coverage provision in the "Personal Liability" section of the Fire Insurance Exchange policy provides, in relevant part:

> "We pay those damages which an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence** to which this coverage applies."

An "occurrence" is defined in the policy as "an accident ... which results during the policy period in **bodily injury** or **property damage**."

**19.** The referenced exclusionary provision specifically states, in pertinent part:

As would be expected, Fire Insurance Exchange argues that the personal injuries sustained by Jonathan Kayser are necessarily excluded under its homeowner's insurance policy, which precludes coverage for injury that "results from the . . . use" of a motor vehicle, because the personal injuries are covered under the Allstate automobile liability policy, as an injury "arising out of the . . . use" of a motor vehicle.

■ While this argument may appear meritorious at first blush, it ignores the rules of construction that have evolved in the jurisprudence of this State, and their specific application to the insurance policy provisions at issue. The coverage provision of the Allstate auto liability policy covers all injuries with some causal connection to the proper use of a vehicle, because the term "arising out of the . . . use", employed in that policy, is ambiguous. Unlike the coverage provision of the automobile liability policy, the words of limitation "results from the . . . use", employed in the exclusionary provision of Farmers Insurance Exchange policy, must be construed narrowly against the insurer. *Farmers Union Mutual Ins. Co. v. Oakland,* 251 Mont. 352, 825 P.2d 554, 556 (1992). Courts that have applied a strict construction to exclusionary language worded similar to the exclusionary language employed in the Farmer Insurance Exchange policy, have concluded that the exclusion operates to preclude coverage only if the use of a motor vehicle was the "efficient and predominating cause" of the injuries suffered by the claimant. *See,*

e.g., *Travelers Insurance Company v. Aetna Casualty and Surety Company,* 491 S.W.2d 363, 367–68 (Tenn.1973); *Toler v. Country Mutual Insurance Company,* 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909, 915 (1984); *Glens Falls Insurance Company v. Rich,* 49 Cal.App.3d 390, 122 Cal.Rptr. 696, 700 (1975).[20]

■ In this case, the injuries sustained by Jonathan Kayser occurred as Tibi was moving either a loaded rifle which he had placed on the front seat of the Suburban, or clothing located on top of the loaded rifle. Either act, if found to be negligent and a proximate cause of Kayser's injuries, would make Tibi liable. While it is clear the injuries sustained by Kayser were causally connected to the use of the Suburban, it is equally clear that the efficient and predominating cause of the accident was not the use of the Suburban, but rather the alleged negligent handling of a loaded firearm by Tibi. Because the use of the Suburban was not the efficient and predominating cause of the injuries sustained by Jonathan Kayser, the court is compelled to conclude that the injuries are covered under the homeowner's policy issued by Fire Insurance Exchange.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the motions for summary judgment submitted by Tibi and Jonathan Kayser are GRANTED. The motions for summary judgment submitted by Allstate and Fire insurance exchange are DENIED.

---

Applying To Coverage E and F—Personal Liability and Medical Payments To Others. We do not cover **bodily injury** or **property damage** which:

\* \* \* \* \* \*

7. results from the ownership, maintenance, use, loading or unloading of:

\* \* \* \* \* \*

b. **motor vehicles**

**20.** Fire Insurance Exchange relies upon *Colorado Farm Bureau Insurance Company v. West*

*American Insurance Company,* 35 Colo.App. 380, 540 P.2d 1112 (1975), in support of its position that the subject coverage and exclusionary provisions, are mutually exclusive. *Colorado Farm Bureau* is inapplicable in this case because the Colorado Court of Appeals arrived at its decision by applying the same rules of construction to both a coverage provision in an automobile liability policy, and an exclusionary provision in a homeowner's insurance policy.

The Clerk is directed to notify counsel for the respective parties of the entry of this order.