No. 01-887

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 196

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

      Plaintiff and Respondent,

    v.

FARREL FERRIN, individually and as
parent and guardian of ALAN FERRIN, a minor,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark,
Honorable Jeffrey M. Sherlock, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

            Ward E. Taleff, Alexander, Baucus, Taleff, Paul & Young, PLLC,
Great Falls, Montana

      For Respondent:

            Lyman H. Bennett III, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  April 4, 2002

Decided:  September 5, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1　Farrel Ferrin, individually and as parent and guardian of his son, Alan Ferrin, appeals from the First Judicial District Court's denial of his motion for summary judgment and its grant of summary judgment to State Farm Mutual Automobile Insurance Company. We affirm.

¶2　The following issue is raised on appeal:

¶3　Did the District Court err in concluding that Alan Ferrin's personal injuries were not caused by an accident resulting from the use of Carl Wajahuski's insured motor vehicle?

FACTUAL AND PROCEDURAL BACKGROUND

¶4　The essential facts of this case are undisputed. In 1995, Farrel Ferrin (Ferrin) discussed purchasing Carl Wajahuski's (Wajahuski) .30/.30 caliber rifle for his son Alan Ferrin (Alan). At the time, Alan was 12 years old. As part of the purchasing process, the Ferrins and Wajahuski arranged a hunting trip so that Alan could hunt deer with the rifle. On October 22, 1995, the Ferrins drove from their residence in Helena, Montana, to Wajahuski's mother's residence in Townsend, Montana. Upon the Ferrins' arrival, Wajahuski informed them that he had arranged a hunt on private land near Harlowton, Montana, and that they would travel together in Wajahuski's vehicle from Harlowton to the hunting site. Wajahuski owned a 1990 Ford Nissan pickup truck that was insured by State Farm Mutual Insurance Company (State Farm).

¶5　Wajahuski drove his truck to Harlowton and the Ferrins traveled in their own vehicle. When Wajahuski and the Ferrins

2

arrived in Harlowton, the Ferrins parked their vehicle and the parties rode together in Wajahuski's truck. Upon arriving at the property where they intended to hunt, they drove around in search of deer. Wajahuski eventually spotted some deer below a ridge, and he instructed the Ferrins to exit the truck and walk downhill while he and his mother circled behind in his truck in order to help load any deer that were shot or to pick up the Ferrins if they were unsuccessful. The deer were approximately 200 to 250 yards from the truck.

¶6 Alan carried Wajahuski's .30/.30 rifle. At the time, it was loaded with some ammunition that Wajahuski had personally reloaded and some factory-loaded ammunition. After walking about 25 to 50 yards, Alan raised the rifle and fired. He missed his first shot, and he ejected the shell and loaded another cartridge. As Alan fired a second shot, the rifle exploded and nearly severed one of his hands. Ferrin shouted for help and Wajahuski returned. The men loaded Alan into Wajahuski's vehicle and drove him to a hospital in Harlowton. Alan was subsequently flown by helicopter to Billings, Montana, for further treatment.

¶7 On December 14, 1999, Ferrin, individually and as parent and guardian of Alan, filed a complaint in the Eighth Judicial District Court, Cascade County, alleging that Wajahuski was liable for Alan's injuries because he had negligently reloaded the round of ammunition which caused the rifle to explode in Alan's hands.

¶8 On March 27, 2000, State Farm filed a declaratory judgment action in the First Judicial District Court. It contended that

3

there was a controversy over whether its automobile insurance contract with Wajahuski provided liability coverage with respect to any claims for bodily injury asserted by Ferrin. Both State Farm and Ferrin filed motions for summary judgment on the issue of whether Alan's injuries were caused by an accident resulting from the use of Wajahuski's truck.

¶9 The District Court held that they were not, and it denied Ferrin's motion for summary judgment and granted State Farm's motion. Ferrin appeals.

STANDARD OF REVIEW

¶10 Our standard of review in appeals from summary judgment rulings is *de novo*, and we apply the same Rule 56, M.R.Civ.P., criteria as the district court. *Wendell v. State Farm Mutual Auto. Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, ¶ 9, 974 P.2d 623, ¶ 9 (citation omitted). Pursuant to Rule 56(c), M.R.Civ.P., summary judgement is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

¶11 The interpretation of an insurance contract is a question of law. *Pablo v. Moore*, 2000 MT 48, ¶ 12, 298 Mont. 393, ¶ 12, 995 P.2d 460, ¶12 (citation omitted). This Court reviews a conclusion of law to determine whether it is correct. *Pablo*, ¶ 12 (citation omitted).

DISCUSSION

4

¶12 Did the District Court err in concluding that Alan Ferrin's personal injuries were not caused by an accident resulting from the use of Carl Wajahuski's insured motor vehicle?

¶13 The insurance policy issued to Wajahuski by State Farm included the following provision:

We will:
1) Pay damages, including punitive or exemplary damages, which an insured becomes legally liable to pay because of:
A.  Bodily injury to others; and
B.  Damage to or destruction of property including loss of use
     Caused by accident resulting from the ownership, maintenance, or use of your car; . . .

¶14   In *Wendell,* an uninsured motorist case, we concluded that the phrase "arising out of the use" is ambiguous, and we adopted an expansive, fact-intensive test to determine whether injuries "arise out of the use" of an uninsured vehicle.  We held that, for purposes of uninsured motorist coverage, an insured's injuries "arise out of the use" of an uninsured vehicle if the injuries originate from, or grow out of, or flow from the use of the uninsured vehicle.  *Wendell*, ¶ 54.  The parties and the District Court applied the *Wendell* test in this case even though it is not an uninsured motorist case and even though a different insurance contract phrase is at issue:  whether injuries were caused by an accident "resulting from the use" of a vehicle.

¶15   We conclude that the *Wendell* test is applicable here.  First, from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business, the phrase "resulting from the use" is equally as ambiguous as the phrase "arising out of the use" which we considered in *Wendell*.  Like the phrase "arising out of the use," the phrase "resulting from the use" is reasonably subject to more than one interpretation.  *See Wendell*, ¶ 53.

¶16   In interpreting an ambiguous phrase, we are guided by general principles regarding contract law as applied to insurance contracts.  *Pablo,* ¶ 17.  If the terms of an insurance policy are

6

ambiguous, obscure, or open to different constructions, we construe the terms in a light most favorable to the insured or other beneficiary, particularly if an ambiguous provision attempts to preclude the insurer's liability. *Pablo*, ¶ 17.

¶17 While we considered the remedial purposes of uninsured motorist coverage in formulating the *Wendell* test, we conclude that the test need not be confined to cases involving only uninsured motorist coverage. The principles of construction governing ambiguous insurance contract terms and phrases remain the same whether the case involves an insured motorist or an uninsured motorist.

¶18 Indeed, our *Wendell* decision cited other jurisdictions which have recognized that the reasoning with respect to uninsured motorist claims applies as well to other clauses in an insurance policy. In *Wendell*, we adopted the test set forth in *Insurance Co. of N. America v. Dorris* (Ga. App. 1982), 288 S.E.2d 856. *See Wendell*, ¶ 54. In *Dorris*, the Georgia Court of Appeals adopted the "originate from, or grow out of, or flow from" test from a case involving personal injury protection coverage-not uninsured motorist coverage. *See Dorris*, 288 S.E.2d at 858 (quoting *Southeastern Fidelity Ins. Co. v. Stevens* (Ga. App. 1977), 236 S.E.2d 550, 551). The *Dorris* court reasoned that although the *Stevens* case involved personal injury protection coverage, its holding regarding the sufficiency of a causal connection between an injury and use of a vehicle was "nonetheless relevant for purposes of contractual interpretation." *Dorris*, 288 S.E.2d at 858.

7

¶19  Additionally, in *Wendell* we discussed with approval *General Accident Ins. Co. of America v. Olivier* (R.I. 1990), 574 A.2d 1240. *Wendell*, ¶¶ 43-44.  In *Olivier,* an uninsured motorist case, the Rhode Island Supreme Court concluded that the reasoning behind affording a broader meaning to the phrase "arise out of the use" would likewise apply to the medical-payments portion of the insurance policy at issue.  *Olivier*, 574 A.2d at 1243.

¶20  Accordingly, we hold that the expansive, fact-intensive test that we adopted in *Wendell* to determine whether injuries "arise out of the use" of an uninsured vehicle is also applicable to determine whether bodily injury was caused by an accident "resulting from the use" of an insured vehicle.

¶21  Ferrin contends that Alan's personal injuries were caused by an accident resulting from the use of Wajahuski's vehicle as set forth in Wajahuski's insurance policy and that State Farm is thus liable for the damages Alan suffered.  He argues that the word "use" as well as the phrase "resulting from the use," are ambiguous and must be construed, under Montana law, against the insurer and in favor of the insured.  Citing *Georgeson v. Fidelity & Guaranty Ins. Co.* (D. Mont. 1998), 48 F.Supp.2d 1262, and *Fire Ins. Exchange v. Tibi* (D. Mont. 1995), 51 F.Supp.2d 1065, Ferrin claims that because the use of Wajahuski's vehicle was integrally related to Alan's activities and injuries at the time of the accident, Alan's injuries originated in, grew out of, or flowed from the use of Wajahuski's vehicle.

8

¶22 In *Tibi*, a rifle discharged inside a vehicle used for a guided antelope hunt when Tibi moved his personal belongings from the front seat of the vehicle to the back seat. *Tibi*, 51 F.Supp.2d at 1068-69. A hunt participant standing outside near the vehicle was shot and injured. *Tibi*, 51 F.Supp.2d at 1069. Tibi's insurance company filed a declaratory action alleging that its policy did not provide coverage to Tibi for the incident because the injuries sustained did not arise out of the use, loading or unloading of an insured vehicle. *Tibi*, 51 F.Supp.2d at 1070. A Montana federal district court concluded that it was reasonable and foreseeable that weapons and other hunting gear would be placed in and moved during the course of a hunting trip. Because the injury occurred while a firearm and/or hunting gear were relocated in the vehicle so that Tibi could sit in the vehicle for the trip home, the court held that the requisite causal connection existed between the accident and the use of the vehicle. *Tibi*, 51 F.Supp.2d at 1073.

¶23 In *Georgeson*, a telecommunications employee was killed in a fall from a utility pole while stringing cable, one end of which was attached to a spool resting on a company truck's trailer. *Georgeson*, 48 F.Supp.2d at 1263. Again, a question existed as to whether the accident was caused by the use of the uninsured vehicle. *Georgeson*, 48 F.Supp.2d at 1265. A Montana federal district court held that because the company truck was used to transport cable to work sites and was used to raise and tension the cable as it was hung on utility poles, a causal connection existed

9

between the underlying accident and Georgeson's use of the company truck and trailer. *Georgeson*, 48 F.Supp.2d at 1267-68.

¶24 State Farm contends that Alan's personal injuries were not caused by an accident resulting from the use of Carl Wajahuski's insured motor vehicle. State Farm argues that although the *Wendell* test is expansive and fact-intensive, it requires that the connection between the use of the vehicle and the injury sustained be more than "remote or tenuous." State Farm maintains that to conclude that Alan's injuries resulted from the use of Wajahuski's vehicle "would be to determine that liability coverage exists in any accident situation with the slightest connection to a vehicle."

¶25 The District Court agreed and concluded that Alan's personal injuries were not caused by an accident resulting from the use of Carl Wajahuski's insured motor vehicle. The court reasoned that while it might have been reasonable and foreseeable that the rifle Alan was using would be placed in and moved about the vehicle as in *Tibi*, it was neither reasonable nor foreseeable that the firearm would contain allegedly negligently reloaded ammunition which would cause the gun to explode and injure Alan after he exited the vehicle and was 25-50 yards away from the vehicle when he fired the gun. We hold that the District Court reached the correct conclusion when it determined that this was not the type of accident which could reasonably be expected to occur as the result of using a vehicle for purposes of a hunting trip. Likewise, we hold that the District Court properly concluded that although the hunting party used Wajahuski's vehicle as part of their hunting

trip, the use of the truck was not integrally related to the incidents surrounding the accident as was the vehicle in *Georgeson*.

¶26 The other cases Ferrin cites are also inapposite. In each of them, the accidents in question would not have occurred without the use of the vehicle. *Aetna Casualty & Surety Co. v. McMichael* (Colo. 1995), 906 P.2d 92 (underinsured motorist coverage applied when employee's injuries arose out of his use of the company truck as a barricade and warning device); *Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.* (Me. 1987), 521 A.2d 308 (insurer liable for injuries incurred when removing loaded shotgun from automobile on hunting trip); *Commercial Casualty Ins. Co. v. Tri-State Transit Co. of Louisiana* (Miss. 1941), 1 So.2d 221 (insurer required to defend suit for death of bus passenger resulting from pneumonia allegedly contracted when bus broke down and passenger forced to walk in inclement weather); *State ex rel. Butte Brewing Co. v. District Court* (1940), 110 Mont. 250, 100 P.2d 932 (insurance policy covering the loading and unloading of an automobile covered injuries incurred during unloading of beer truck).

¶27 Here, on the other hand, the accident with the rifle could have occurred without the use of Wajahuski's vehicle. As such, this is more akin to the circumstances of *Farmers Union Mutual Ins. Co. v. Blair* (1991), 250 Mont. 52, 817 P.2d 1156. In *Blair*, a passenger removed a loaded revolver from a friend's car, went into the house and, while removing the revolver from his pants, accidentally shot another man. *Blair*, 250 Mont. at 53, 817 P.2d at 1157. The district court held that since the shooting accident

11

occurred inside a house during a party after the passenger had left the car, the accident did not arise from the use of the vehicle. *Blair*, 250 Mont. at 56-57, 817 P.2d at 1159.

¶28 Here, as in *Blair*, the accident could have occurred in any location, regardless of where the rifle was stored or how the hunters reached their destination. The fact that the truck was used to transport the hunters and assist in the hunt simply provides no connection between the use of the truck and the explosion of the rifle. Had Alan walked to the hunt carrying the rifle or engaged in target practice in his backyard, the rifle still would have exploded.

¶29 We hold that the District Court did not err in concluding that Alan Ferrin's personal injuries were not caused by an accident resulting from the use of Carl Wajahuski's insured motor vehicle. Accordingly, State Farm was entitled to summary judgment as a matter of law.

¶30 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER