RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

NISSAN NORTH AMERICA, INC.,

           *Plaintiff-Appellant*,

   *v.*

CONTINENTAL AUTOMOTIVE SYSTEMS, INC., successor
to Continental Teves, Inc.,

           *Defendant-Appellee*.

No. 22-5469

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00396—Aleta Arthur Trauger, District Judge.

Argued: December 12, 2023

Decided and Filed: February 6, 2024

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Eugene N. Bulso Jr., BULSO PLC, Brentwood, Tennessee, for Appellant. Herbert C. Donovan, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellee. **ON BRIEF:** Eugene N. Bulso Jr., Paul J. Krog, BULSO PLC, Brentwood, Tennessee, for Appellant. Herbert C. Donovan, Jason D. Killips, Andrew B. Fromm, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellee.

     CLAY, J., delivered the opinion of the court in which MOORE and NALBANDIAN, JJ., joined. NALBANDIAN, J. (pp. 16–18), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  This is an indemnification action between Nissan, a car producer, and Continental, a brake parts supplier, for the amount of a jury award from a products liability case in California.  After a car accident involving a Nissan vehicle, several plaintiffs brought an action alleging defects in the vehicle's braking system against Nissan and Continental.  After Continental settled and Nissan proceeded to trial, the jury determined that the design of the vehicle's braking system caused harm to the plaintiffs.  Accordingly, the jury returned a verdict in favor of the plaintiffs, awarding them $24 million in damages.  During the litigation, Nissan incurred another $6 million in attorney fees and costs.

Following the California jury's verdict, Nissan brought this action against Continental, seeking indemnification for the jury award and its attorney fees and costs based on a provision in the contract between the parties.  Both Nissan and Continental moved for summary judgment. The district court granted Continental's motion for summary judgment in full.  Nissan appeals that ruling.  For the reasons set forth below, we **AFFIRM** the district court's order granting summary judgment to Continental.

**BACKGROUND**

**A.  The California Case**

On August 29, 2012, Solomon Mathenge was driving his 2004 Infiniti QX56 in California when he struck another vehicle in an intersection, killing its three occupants.  The decedents' surviving relatives filed several lawsuits, which were ultimately consolidated into a single proceeding ("the California Case").  The California Case involved products liability claims against both Nissan, which designed and produced the vehicle, and Continental, which supplied relevant parts of the braking system.  Before trial, Continental, but not Nissan, settled with each of the plaintiffs.  Nissan reviewed the settlement and stipulated that it was made in good faith.

At trial, the plaintiffs argued that the collision occurred when the feel of the brakes in Mathenge's Infiniti changed mid-drive, causing Mathenge to panic. Nissan designed the braking system to switch to a secondary braking mode, called "optimized hydraulic braking" ("OHB"), when the vehicle's software triggered an error code representing the unavailability of the primary braking system. The code was sometimes triggered in error by Continental software.

Plaintiffs presented Dr. Ioannis Kanellakopoulos, a braking system and software expert, as an expert witness. Dr. Kanellakopoulos testified that there were two mistakes underlying the collision. First, there was a technical mistake in the calibration of the Continental-supplied software that contributed to false error codes. Second, Nissan made the business decision to activate the secondary braking mode following an error code. As to the latter mistake, Dr. Kanellakopoulos testified that, rather than changing how the brakes worked in the car while in use, "[t]he best strategy would have been to just do what Toyota did and, frankly, the other [manufacturers] that were using this, and what Continental suggested, which was turn on the brake warning light and let the person go to the dealer and take care of it." R. 192-23, Page ID #7961.

While finalizing the jury instructions and verdict form, the parties disputed how to define which product in the Infiniti was defective. Nissan advocated for the trial court to instruct the jury that the product at issue was the Continental-supplied brake sensor and software, whereas the plaintiffs requested that the trial court instruct the jury that the defective product was the braking system as a whole. The trial court agreed with the plaintiffs and identified the relevant product as the braking system. In particular, the trial court recognized that the braking system "covers not just the [Continental sensor]. It covers [Nissan's] decision even to have it go into OHB mode. It's the way they designed the entire system" that served as the basis for the litigation. Trial Tr., R. 209-41, Page ID #15228. The trial court echoed Dr. Kanellakopoulos' observation that other car manufacturers, under similar conditions, triggered a warning light telling drivers to take the car to the mechanic rather than activating an alternate braking mode. *Id.*

On July 21, 2017, the jury in the California Case returned a verdict concluding that (1) "the design of the 2004 Infiniti QX56's braking system [was] a substantial factor in causing

harm to" the three decedents; (2) "the benefits of the design of the 2004 Infiniti QX56's braking system [did not] outweigh the risks of the design;" (3) Nissan was "negligent in failing to recall the 2004 Infiniti QX56;" and (4) "Nissan's negligence in failing to recall the 2004 Infiniti QX56 [was] a substantial factor in causing harm to" the three decedents.  Jury Verdict, R. 55-2, Page ID #920–21.  Though the jury concluded that Mathenge was also negligent, it concluded that Mathenge's negligence was not a substantial factor in the crash and assigned all responsibility to Nissan.  The jury awarded the plaintiffs $24,931,109 in damages.

Following the verdict, Nissan filed a motion to amend the judgment.  It sought to have the judgment reduced by the amount of Continental's settlement on the grounds that both Nissan and Continental were jointly and severally liable.  The state court granted Nissan's motion and reduced the plaintiffs' award by $3,300,000 to $21,631,109 to reflect a deduction of the settlement amount paid by Continental.

The California Court of Appeals affirmed the judgment.  It held that plaintiffs had put forward substantial evidence that "Mathenge's car switched into OHB mode on the day of the collision" and that "switching into OHB mode caused the accident."  State Court of Appeals Opinion, R. 55-6, Page ID #955.  Further, the Court of Appeals affirmed the trial court's ruling to offset the award by the amount of the settlement paid by Continental.

## B.  The Braking System

Nissan brake design engineers prepared the specifications for the braking system and its components for the vehicle relevant to this action.  The braking system includes a brake pedal assembly, a brake booster assembly, a master cylinder, an anti-lock brake system pump, brake lines, calipers, rotors, brake pads, and brake fluid.

The braking system contains both primary and secondary brake-assist mechanisms.  The primary brake-assist mechanism uses a vacuum boost to multiply the force the driver applies to the brake pedal.  When the driver pushes on the brake pedal, that in turn pushes on the booster which increases that force using a vacuum.  The master cylinder in the braking system converts the force into pressure that is ultimately applied to the wheels of the vehicle.  In the event of sudden braking, the anti-lock brake system pump modulates pressure at the wheels to prevent

lockup. Without the vacuum boost, the force applied to stop the vehicle is limited to the force applied by the driver's foot on the brake pedal.

The secondary brake-assist mechanism uses OHB, which assists the driver in the event that the vacuum boost is unavailable. The OHB function generates pressure in the braking system to stop the vehicle using the braking system's anti-lock brake system pump instead of the vacuum boost. When activated, the OHB function generates noise and pedal feedback to anti-lock braking, and changes the pedal feel for the driver. Nissan intended for the pump to be used during OHB to supplement the brake force available to the driver in the vehicle's braking system.

Nissan purchased some of the parts for the braking system from Continental. Specifically, Continental supplied the brake-booster assembly component of the braking system, with attached master cylinder, and a control unit integrated with the anti-lock brake system pump. The control unit houses software developed by Continental that controlled the pump.

Relevant to the two brake-assist mechanisms, the booster assembly unit contains a delta stroke sensor ("DSS"), which monitors the movement of booster components as a proxy for the presence of vacuum. Based on its monitoring, the DSS sends electrical signals to the control unit where the software interprets the signals. Were the DSS to detect a failure of the vacuum boost system, it would send an electronic signal alerting the control unit and making available the OHB function. If the DSS itself were to fail, it would trigger the diagnostic trouble code C1179 to indicate its failure.[1] Based on the narrow calibration of the software within the control unit, and the tendency of the DSS to physically "drift," the control unit at times incorrectly concluded that a functioning DSS had failed. When a C1179 code is present, Nissan designed the braking system to make OHB's failsafe function available to the driver. This design, specified by Nissan, contrasts with what some other car manufacturers do, which is trigger the brake light, indicating to the driver that the car should be inspected by the dealer.

---

[1]An inspection of the subject vehicle revealed the presence of the code prior to the collision, but it is not clear that the code was triggered in error.

Nissan purchased the brake parts from Continental pursuant to a standard purchase order. The purchase order's terms and conditions include the following Section 8, entitled "Seller[']s Liability:"

> In addition to what is specified elsewhere on the document, Seller's liability shall also include all cost incurred as a result of vehicle recall programs pursuant to NTMVSA, damage or cost due to problems developed in other parts resulting from defective parts supplied by Seller, and damages or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by Seller.

Purchase Order, R. 43-2, Page ID #724. The terms and conditions further state they shall be construed and governed according to Tennessee law.

## C. The Instant Case

On April 5, 2019, Nissan filed this action in Tennessee state court against Continental Automotive Systems, Inc., and two affiliated companies, Contitech North America, Inc. and Continental Tire the Americas, LLC. Defendants removed the action to federal court based on diversity jurisdiction. Nissan seeks indemnification from Continental for the full amount of the jury verdict in the California Case[2] and for the $6,200,000 in attorney fees and litigation costs that Nissan incurred defending the California Case.

Below, Nissan argued that it was entitled to indemnification under several theories, two of which the district court rejected when it partially granted Continental's first summary judgment motion. After conducting additional discovery, the parties again cross-moved for summary judgment. The district court denied Nissan's motion and granted Continental's motion. Nissan timely appealed. Nissan argues only one indemnification theory before us: that a clause in the purchase order between the parties requires Continental to indemnify Nissan for the entire judgment in the California Case.

---

[2]Nissan seeks the full amount of $24,931,109, despite the trial court's decision to reduce the award by $3,300,000 to reflect Continental's joint and several liability.

**DISCUSSION**

## A. Standard of Review

"We review the district court's grant of summary judgment *de novo*." *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Kirilenko-Ison*, 974 F.3d at 660 (quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016)).

## B. Section 8

Section 8 of Nissan and Continental's purchase agreement for the relevant brake parts requires Continental to indemnify Nissan in certain situations. Both parties agree that the interpretation of Section 8 is the threshold issue for this case because it determines whether and when Continental must indemnify Nissan for certain claims. Section 8 provides, in relevant part, that Continental's liability shall include "damages or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by [Continental]." Purchase Order, R. 43-2, Page ID #724.

Nissan argues that "Paragraph 8 requires Continental to indemnify Nissan for expenses arising from *claimed* defects in Continental parts." Pl. Br., ECF No. 26, 47. By contrast, Continental argues that it would be liable under Section 8 for "actual—not alleged—defects in its products, and then only when the actual defect is to blame for the harm to Nissan." Def. Br., ECF No. 31, 35. The district court, rejecting Nissan's interpretation, granted summary judgment for Continental. By the terms of the contract, the district court held, Continental must indemnify Nissan where Continental's defective parts caused injury or property damage. Nissan could establish this either by (1) showing a preclusive finding that a Continental defect caused a relevant injury or (2) litigating that issue in the first instance in the indemnification action. We

agree with this assessment of the contract. And we agree that because Nissan did neither, it cannot recover.

Nissan urges an interpretation of Section 8 that would impose liability on Continental merely for claims of defects. Nissan first argues that the phrase "arising from," as it appears in Section 8, "sweeps broadly" such that it encompasses damages and costs from alleged Continental defects, subjecting Continental to potential liability without needing to prove that there was a defect or that that defect caused the alleged damages. Pl. Br., ECF No. 26, 46. Continental, for its part, argues that "arising from" refers to "a rational, causal connection" such that Continental's liability is limited to only damages actually caused by a defective part. Def. Br., ECF No. 31, 34.

We apply the law of the parties' chosen forum state when sitting in diversity. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). Tennessee case law defines "arising out of" as a "broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'" *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973). While "arising from" can indeed be broad, Tennessee courts interpret "arising" to imply some sort of link between whatever is arising and the cause from which it arises. *Id.* at 365–66. Section 8's "arising from" language therefore requires that Nissan show a link, beyond a mere allegation, between the initial claim for damages and the damages and cost that Nissan ultimately incurred.

Nissan further defends its interpretation by arguing that "claims" is modified by "caused directly or indirectly by defective parts supplied by" Continental. Pl. Br, ECF No. 26, 40. Under this interpretation, if the *claims*, as opposed to the actual injury or damages, are caused by defective Continental parts, then Continental must pay.

But Nissan's interpretation contravenes typical rules of grammar and construction, particularly the last antecedent rule. The last antecedent rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 446 (6th Cir. 2014). Nissan's reading eliminates some key

words and would have the phrase "caused directly or indirectly by defective parts supplied by [Continental]" modify not the phrase it immediately follows—"of personal injury or property damages"—but a word earlier in the sentence—"claims." The last antecedent rule tells us otherwise. While this rule is by no means dispositive, we see no reason to depart from it, particularly when a better reading is available. As Continental persuasively shows, the phrase "damages or cost" is modified by the phrase "arising from claims of personal injury or property damages," which directly follows it. In turn, the phrase "personal injury or property damages" is modified by the immediately proximate phrase "caused . . . by defective parts supplied by" Continental. We are inclined to adopt this more straightforward reading—permitting Nissan to recover only when a Continental part actually causes damages—which gives meaning to each word in the provision and complies with all relevant grammatical rules.

Nissan also argues that reading Section 8 to cover claims of damages avoids absurdity. Were the section to permit Nissan to recover only for actual damages, Nissan argues that it could never recoup costs incurred by successfully defending personal injury claims directed at Continental's parts. Therefore, Nissan would benefit from losing, which is a perverse incentive. But such a situation is unlikely to come to pass. Consider, for instance, a hypothetical lawsuit in which a plaintiff brings a claim against Nissan alleging that a defective Continental part injured the plaintiff. However, through the course of litigation, Nissan maintains and successfully proves that the Continental part was not defective or that the plaintiff's injury was caused entirely by the plaintiff's own negligence. In that scenario, it would be an absurd result to require Continental to reimburse Nissan for the cost of defending against the plaintiff's frivolous or non-meritorious lawsuit. In this hypothetical lawsuit, Continental has not supplied defective parts, or Continental's parts have not caused personal injury. Nissan argues that perhaps this creates a perverse incentive for Nissan to lose. However, in a hypothetical indemnification action against Continental, Nissan would likely have to satisfy the principles of collateral estoppel, which require Continental to have an opportunity to litigate the issue. *See Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009) (holding that, before collateral estoppel may be applied to bar litigation of an issue, "the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding"). Therefore, Continental would have both the opportunity and incentive to defend against the

products liability lawsuit.  Moreover, Nissan does not grapple with the absurdity caused by its interpretation of the language, which would require Continental to reimburse Nissan even for meritless claims.

Nissan also argues that the other portions of the terms and conditions support its interpretation of the key language of Section 8.  Nissan contends that the parties clearly intended Section 8 to assign to Continental, rather than to Nissan, the risks associated with third-party claims targeting Continental's parts.  In opposition, Continental argues that Section 8 addresses three situations in which Continental is liable, each triggered by "an actual, not merely alleged, defect."  Def. Br., ECF No. 31, 35.  Reading the contract as a whole supports Continental's view.  Section 8 makes Continental liable for:  (1) "all cost incurred as a result of vehicle recall programs" pursuant to federal regulation; (2) "damage or cost due to problems developed in other parts resulting from defective parts supplied by" Continental; and (3) "damages or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by" Continental.  Purchase Order, R. 43-2, Page ID #724.  The first two scenarios make Continental liable for *actual* defects in its parts, which supports construing the third scenario as permitting indemnification only for actual defects as well.  *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) ("All provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract.").

Therefore, the district court properly determined that Section 8 of the terms and conditions of the relevant purchase agreement requires a showing that Continental parts were defective and caused personal injury before Continental may be held liable for Nissan's damages and costs.  We must now determine whether such a showing was made.

**C.  Continental's Liability**

The district court held that Nissan could show that a Continental defect caused Nissan's damage—as required by Section 8—either by (1) pointing to a prior judgment in which that issue was decided or (2) litigating for the first time in the indemnification action whether Continental's parts were actually defective and to blame for the underlying injury.  The district court held, and

we agree, that the second avenue—actually litigating whether Continental's parts were defective and causally responsible for the accident—was foreclosed to Nissan because of its strategic decisions in this action.**³**  Despite being invited to do so by the district court, Nissan declined to produce evidence of Continental's liability other than the record and judgment in the California Case.

Nissan has therefore defaulted to the first avenue, and must show that the factfinder— here the California jury—made findings that a Continental defect existed and caused the relevant harm.  The district court concluded that Nissan could not prevail because the verdict and judgment in the California Case were not necessarily based on a holding that a Continental part was defective.  The plaintiffs in the California Case alleged that multiple interrelated features of the vehicle at issue contributed to the fatal collision, and the jury's verdict did not resolve the question of which alleged flaws amounted to defects and caused the collision.  As the district court explained:

> Even if the jury in the [California Case] concluded that Continental's DSS provided a false positive in Mathenge's vehicle—which it appears that it did— that does not actually mean that the jury concluded that the DSS or any other specific part was defective.  Many products are capable of malfunctioning from time to time, and Nissan has not identified any proposition of law establishing that such errors *per se* establish a product defect, as the term is understood in product liability law. . . . The jury in the [California Case] could well have concluded that, while a Continental sensor did send a false error code, the only actionable defect in the 2004 Infiniti QX56 was Nissan's decision to have a reading from a sometimes-wrong sensor immediately trigger an emergency system that changed the feel of the car's [brakes].  Nothing on the face of the judgment of the [California Case], therefore, establishes that the award against Nissan arose out of a claim for damages "caused directly or indirectly by defective parts supplied by" Continental.

Second Summ. J. Order, R. 223, Page ID #19848–49.

---

**³**The concurrence expands on Nissan's strategic decision not to pursue a contribution action, in which a factfinder would assign liability to each party according to its relative level of fault, and criticizes Nissan's chosen all-or-nothing approach.  Because the parties did not brief the issue of comparative fault—indeed, Nissan's litigation decisions affirmatively foreclosed any arguments on this issue—and because the district court made no factual findings upon which we can base a notion that Continental should shoulder some share of liability, we do not (and, in fact, cannot) comment further on the issue of comparative fault.

On appeal, Nissan contends that the California Case conclusively established that Continental's parts were defective and that those parts caused the third parties' injuries. In support of that claim, Nissan makes three arguments. None are persuasive.

### 1. *The Trial in the California Case*

First, Nissan asserts that the district court erred in looking only to the judgment of the California Case rather than the trial as a whole. As Nissan sees it, the California Case plaintiffs asserted that the collision resulted from defects in the Continental-supplied DSS and its software. In support, Nissan points to the complaint, the summary judgment briefing, the motions in limine, and the arguments at trial in which plaintiffs discussed the DSS and its software. Nissan also cites the plaintiffs' expert witness testimony, which noted that the DSS and the software that triggered the C1179 code had a "bug." Pl. Br., ECF No. 26, 53–54. Finally, Nissan points out that the California Case plaintiffs blamed no other brake system component, such as the calipers or rotors, for the collision. Nissan argues that Continental would have been liable in the California Case because the software problems identified, both in the interpretation of the DSS signal and the OHB activation, were characteristics of the booster assembly and the control unit supplied by Continental. In Nissan's view, Continental would be liable regardless of Nissan's involvement in and responsibility for the design.

However, Nissan fails to grapple with the import of the jury's verdict in the California Case, which determined that the "design of the 2004 Infiniti QX56's braking system [was] a substantial factor in causing harm to" the three decedents and that "the benefits of the design of the 2004 Infiniti QX56's braking system [did not] outweigh the risks of the design." Jury Verdict, R. 55-2, Page ID #920–21. In other words, the California jury decided whether the design of the braking system *as a whole* was defective, not whether a specific Continental part was defective. And Nissan was responsible for the overall design of the braking system. Further, Nissan has failed to rebut the idea that the occasional malfunctioning of the DSS or the software did not necessarily establish a *per se* defect in the Continental parts.**[4]**

---

**[4]**As the district court pointed out, California law has a complicated products liability doctrine which considers consumer expectations and reasonableness. *See Romine v. Johnson Controls, Inc.*, 224 Cal. App. 4th 990,

Continental persuasively argues that the California Case did not establish that a Continental part was defective or that a Continental part caused Nissan's damages. To be sure, the DSS and the software supplied by Continental were implicated in the plaintiffs' theory of liability against Nissan. However, as the trial court in the California Case recognized, the plaintiffs' case against Nissan involved the design of the entire braking system, including Nissan's design decision to have a C1179 code trigger OHB mode. Because the jury verdict in the California Case did not reach the specific question of whether a Continental part was defective or caused injury, Nissan cannot rely on the California Case trial to establish what Section 8 requires.

### 2. Post-Trial Rulings

Second, Nissan contends that the California trial court confirmed that the judgment rested on defects in Continental parts.[5] Nissan points to the trial court's denial of Nissan's motion for a new trial or judgment notwithstanding the verdict. In comments from the bench, the trial judge stated that there was sufficient evidence from which a jury could find causation because the evidence showed that there was a "design defect" in the DSS and its software that caused a false C1179 code, and that the different feel of the brake pedal in OHB mode caused the average driver to panic. Hearing Tr., R. 209-46, Page ID #15574–75. However, the trial court also stated that Nissan chose to have the C1179 code trigger OHB mode rather than merely trigger a warning light. Accordingly, the trial court's comments from the bench are consistent with both the jury verdict and the evidence that considered the design of the entire braking system. These comments do not show that the court based its decision on the presence of a Continental-created defect.

Nissan also argues that the court's decision to offset the verdict by Continental's settlement payment establishes that a Continental part was the injuriously defective part. But the trial court's decision does not reach as far as Nissan needs it to. The trial court offset the award

---

1000–01 (2014). A jury could reasonably find either way on the issue of whether the Continental DSS or software malfunctioned to the point of upsetting consumer expectations. But, unfortunately for Nissan, no jury has done so.

[5]Nissan also points to the appellate court's decision affirming the trial court's rulings. However, because the trial court's rulings are not sufficient to establish that a Continental part was defective or caused injury, the appellate court's decision affirming the trial court was also not sufficient.

pursuant to California law, which allows for joint and several liability of all defendants in the chain of distribution.  *Bostick v. Flex Equip. Co*., 147 Cal. App. 4th 80, 88–89 (2007).  Nissan and Continental were undoubtedly in the same chain of distribution, which allowed the trial court to find them jointly and severally liable such that Continental's settlement could offset Nissan's liability.  The joint and several liability finding proves only that Nissan and Continental were in the same chain of distribution, and does not address the comparative fault of either party.  Thus, this argument also fails.

### 3.  Issue Preclusion

Third, Nissan argues that the judgment in the California Case binds Continental via issue preclusion.  In response, Continental argues that it is not subject to issue preclusion because the California Case did not establish that a Continental part was defective or that it caused injury.  We give the same preclusive effect to a state court judgment that the judgment would receive in the rendering state.  *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738).  Under California law, issue preclusion requires, among other things, that the issue sought to be precluded was "necessarily decided in the former proceeding."  *Lucido v. Superior Ct.*, 795 P.2d 1223, 1225 (1990).  As discussed above, the California Case did not "necessarily decide" the issue of whether a Continental part was defective and caused injury.  Therefore, Nissan cannot apply issue preclusion to establish Continental's liability under Section 8 in this indemnification action.

Nissan relied on only the California Case to show that a Continental defect caused the injuries from the underlying collision.  But Nissan cannot show that anything in the California Case conclusively determined the question of a Continental defect because that issue was never decided.  Section 8 requires such a showing for Continental to be liable for the judgment.  Therefore, Continental need not indemnify Nissan, and the district court was correct in granting summary judgment to Continental.

### D.  Attorney Fees

The district court granted Continental summary judgment *sua sponte* on Nissan's claims for attorney fees and costs from the California Case because Nissan failed to establish that

Continental was liable to Nissan under Section 8 of the terms and conditions of the purchase agreement.  We agree and affirm.

We review the substance of a district court's summary judgment grant *de novo*, but we review the *sua sponte* procedure utilized by the district court for abuse of discretion.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005).  Nissan, in arguing that the district court erred in denying attorney's fees *sua sponte*, fundamentally misunderstands the district court's ruling.  Rather than raise a separate claim for attorney fees, Nissan asserted that, as part of its claim for indemnification, it was entitled to the attorney fees and costs it incurred defending the California Case.  The district court denied Nissan's claim for attorney fees and costs "[f]or the same reason" that the district court denied Nissan's claim for the award entered against it in the California Case:  Nissan failed to establish its right to indemnification pursuant to Section 8.  Second Summ. J. Order, R. 223, Page ID #19850 n.6.  Its claims for attorney fees rise, and, in this case, fall, with its indemnification claim.  Further, Nissan must show that it lacked notice of the *sua sponte* summary judgment decision, as required by the abuse of discretion standard.  *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013).  But Nissan cannot argue that it lacked notice that the district court was going to rule on the issue of attorney fees when it entered summary judgment in the indemnification claim.  Nissan itself asserted that it was entitled to such fees *as part* of its indemnification claim.  Because the issue of attorney fees was before the district court, the district court properly granted summary judgment to Continental on the entirety of Nissan's claim for indemnification.

## CONCLUSION

The indemnification contract between the parties requires some proof that a Continental part was defective and that that defect caused the injury in question.  But Nissan offers no proof in this regard, and the California judgment cannot provide it.  Therefore, we **AFFIRM** the district court's grant of summary judgment to Continental.

—————————

**CONCURRENCE**

—————————

NALBANDIAN, Circuit Judge, concurring.  I agree with the majority opinion in full.  I write separately to address Nissan's argument, raised at oral argument, that its Terms and Conditions hold Continental liable for costs "directly or indirectly" arising from a claim.  And that Continental is "indirectly" liable for the entire amount of the California judgment and related costs and fees.  Nissan's argument is correct as far as it goes—Continental's liability can be direct or indirect.  But implicit in Nissan's argument is another step, that Section 8 is a full indemnification provision, which at common law is an all-or-nothing inquiry.

Instead, Section 8—entitled "Sellers Liability," R.43-2, p.14, PageID 724—likely requires something analogous to the common law doctrine of contribution.  And that doctrine holds jointly and severally liable parties to their share of the damages based on comparative fault.  *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 433 (Tenn. 1996) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 51, at 341–42 (5th ed. 1984) and American Law of Products Liability at § 52.1) (explaining that "traditional implied indemnity shifts the entire loss from the party found liable to a party who should bear the entire loss," but "contribution shifts only part of the loss from one party to another").  So whether Continental's liability is "direct" or "indirect," it is still limited to its share of the liability.

Nissan's Terms and Conditions spell out something more like contribution than indemnification because Nissan holds its sellers liable for "damages or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by Seller."  R.43-2, p.14, PageID 724.  As the majority correctly holds, this requires a showing that Continental provided Nissan a defective part and this defect caused the personal injury or property damage.  But the California plaintiffs alleged that both Nissan's brake system design and Continental's DSS software were defective.  So the amount of damages Continental owes is a matter of comparative fault that must be litigated below (assuming, of course, that we can't glean from the California judgment that Continental is 100% liable).  This is because to know what damage or cost arises directly or indirectly from the claim, a judge—and likely a jury—

must conduct a comparative fault analysis.  Otherwise, how are we to know what damage or cost arose from Nissan's defective part as opposed to Continental's?

This approach, rather than an all-or-nothing gambit, likely makes the most sense between the parties.  As the majority points out, it would be absurd for Continental to be liable for *all* costs to Nissan where, like here, a plaintiff alleges, and a jury likely finds, a defect in *both* Continental's *and* Nissan's parts.  But, in my opinion, it is equally implausible to conclude that Continental is not liable at all.  In my assessment of the California trial and the Terms and Conditions, the answer for how much Continental owes for its comparative fault lies somewhere between 0 and 100.[1]

Indeed, California has a doctrine to deal with this type of scenario—comparative equitable indemnification, which allows defendants in a strict liability case to apportion "their liability as among themselves," "determined according to comparative equitable indemnity principles."  50A Cal. Jur. 3d Prods. Liab. § 33; *Bailey v. Safeway, Inc.*, 131 Cal. Rptr. 3d 41, 46 (Cal. App. 2011) ("The purpose of equitable indemnification is to avoid the unfairness, under the theory of joint and several liability, of holding one defendant liable for the plaintiff's entire loss while allowing another potentially liable defendant to escape any financial responsibility for the loss."); *see also Bostick v. Flex Equip. Co., Inc.*, 54 Cal. Rptr. 3d 28, 44 (Cal. App. 2007) (remanding to "determine the amount of any equitable indemnity" a tortfeasor may recover from the other based on comparative fault).  So in California, comparative equitable indemnity can

---

[1]In other words, although I don't agree with Nissan that all of the markers that it has assembled establish that Continental is 100% liable for the California judgment, I think that those markers likely establish some Continental liability.  The California Court of Appeals, for example, held that Continental was jointly and severally liable for the underlying verdict.  *See Cruz v. Mathenge*, No. B286067, 2019 WL 926498, at \*19, \*21 (Cal. Ct. App. Feb. 26, 2019) (concluding that though the "jury found Nissan was liable for the defective design," both "Continental and Nissan were jointly and severally liable for the product liability claim").  And recall that the complaint alleged that Continental supplied a defective part.  *See* R.43-4, Compl. p.14, PageID 789.  This was recounted by both the district court below and the California Court of Appeals.  *See* R.223, Dist. Ct. Mem. Op., pp.1–2, PageID 19830–31 (noting that the *Cruz* trial "included claims against both Nissan, which manufactured Mathenge's vehicle, and Continental, which had supplied Nissan with some components of the vehicle's braking system"); *Cruz*, 2019 WL 926498, at \*4 (noting the same).  Nor did the jury's verdict necessarily pin all of the fault on Nissan—it simply isn't clear.  *See* R.223, p.4, PageID 19833 (explaining that the jury "returned a verdict concluding that the 'design of the . . . braking system was a substantial factor in causing' the collision").  As noted, Continental provided components for this braking system, so it can't escape the inference that its parts contributed to the collision, especially because there is evidence that Continental's DSS software misfired.  *Cruz*, 2019 WL 926498, at \*1–2.

"apportion liability among wrongdoers based on their relative culpability" when their actions "combined to create an indivisible injury to the plaintiff."   14A Cal. Jur. 3d Contribution & Indemnification § 103.

I believe that Section 8 of the Terms and Conditions, which governs under Tennessee law, essentially permits something akin to a comparative-fault analysis to assign liability.[2]  So it is possible for one jointly and severally liable tortfeasor (Nissan) to bring an action against another (Continental) to see how much the other owes under the doctrine of comparative fault.

Nissan instead elected to pursue an all-or-nothing outcome.  It believes the language of "directly or indirectly," combined with the Continental liability markers, shows that it should get everything.  But for the reasons that the majority gives, I don't think that Nissan can get all the way home.  Again, though I agree with Nissan that its Terms likely could have made Continental liable for something in the wake of the California trial, "something" is not what Nissan is asking for.  And for that reason, I agree that we should affirm.

---

[2]Although the Terms and Conditions govern this case, it also appears that Tennessee courts recognize comparative fault in products liability cases, *see Gen. Elec. Co. v. Process Control Co.*, 969 S.W.2d 914, 916 (Tenn. 1998) (explaining that "[c]ontribution may still be viable in . . . 'appropriate' products liability case[s]"), though it is not fleshed out as extensively as it is in California.